Lester Holtzman, J.
This is an application by petitioners to reinstate the ‘ ‘ State examination privileges of Marsha Goldwyn” and expunge “from the records of the Commissioner of Education and Flushing High School all reference to a finding of fraud allegedly committed by the said Marsha Goldwyn on January 25, 1967 ”.
Infant petitioner Marsha Goldwyn is a senior student attending Flushing High School in this county. On January 25, 1967, Marsha took the State regents examination in American History and World Backgrounds III. At the beginning of the three-hour examination, two sheets of yellow scrap paper were distributed along with the test paper. Later, near the end of the examination, a proctor noticed Marsha referring to a piece of scrap paper containing notes on both sides. He confiscated the paper and delivered it to the chairman of the Social Studies Department, who, at the end of the examination, took Marsha *95 with the paper to the office of the acting principal of Flushing High School.
Marsha explained to the acting principal that she had prepared the notes during the first half-hour of the examination while the material was fresh in her mind. At his request she made a written statement to that effect. The questioning continued and, according to the affidavit of the acting principal:
“ Since it seemed impossible for Marsha to have written the notes as she said she had in a half hour at the beginning of the examination, I challenged her, not to duplicate this feat but just to copy over the notes as fast as she could on the same kind of 6 X 9 paper. In twenty minutes she had not succeeded in copying one-quarter of her notes. * * *
‘ ‘ I questioned Marsha again and she finally admitted to the cheating, whereupon I tore up her original statement and gave it back to her asking her for a written statement of her new story. This she gave me. All through this Marsha was in a highly excited, emotional state and in tears.”
The acting principal continued his investigation primarily with the purpose of determining whether the paper taken from Marsha could be reproduced in a half-hour. The next day Marsha recanted her ‘ ‘ confession ’ ’.
On January 31, 1967, the acting principal addressed a letter to the Department of Education, stating: “ I regret to report that Marsha Goldwyn cheated on the American History and World Backgrounds III Regents of January 1967. Her address [g * * * )>
This appears to be the full text of his communication. In a reply dated February 3,1967, the test administration supervisor of the Division of Educational Testing stated:
“ On the basis of your letter dated January 31, 1967, we have suspended the Regents examination privileges of Marsha Goldwyn.
‘1 In accordance with Regents regulations, credit must be cancelled in the examination in which fraud occurred and in all Regents examinations taken subsequently to the one in which the irregularity occurred. This suspension applies also to the Regents Scholarship and College Qualification Test.
“ Permission to enter Regents examinations in the future must be denied until Regents privileges have been restored in writing by this Department.
“After a period of one year, if the behavior of the pupil has been exemplary, consideration will be given to the recommendation of the principal that these privileges be restored.
*96 “We appreciate your cooperation and assistance in the maintenance of Regents standards.”
On February 8, 1967, petitioners’ counsel wrote to the president of the Board of Education of the City of New York complaining of the imposition of sanctions upon his client without “ even the semblance of a hearing.” By a letter dated March 3, 1967, the assistant superintendent of schools for District 25, Queens, wrote to petitioners’ counsel suggesting a conference to be held on March 10, 1967, but stating that counsel was invited “as an observer only.” Despite counsel’s objections, the assistant superintendent refused to permit counsel to actively participate in the conference in behalf of his clients. On March 10, the conference was held in the absence of petitioners, who refrained from attending on advice of counsel, and subsequently the assistant superintendent concurred in the conclusion of the acting principal. Thereafter this proceeding was commenced.
Regents examinations are administered by the Board of Regents and the Commissioner of Education to students attending secondary schools in this State pursuant to sections 208 and 209 of the Education Law. Pursuant to section 207 of that law, rules and regulations are promulgated by both the Board of Regents and the Commissioner relating to such examinations, which rules and regulations state in pertinent part:
‘ ‘ A candidate who with fraudulent intent endeavors to obtain any credential of the University shall be debarred from entering any Regents examination until admitted by special permission from the Commissioner of Education after written application, and any credentials already issued to him shall be subject to cancellation. This rule includes the use of unfair means to pass an examination, the alteration of any Regents pass card or other credential, or intentional misrepresentation in connection with Regents examinations or credentials.” ' (Rules of the Board of Regents, 8 NYCRR 8.5.) '
“ (a) Cases to be reported. Examiners shall- report to the department all cases of apparent fraud in connection with examinations by or under its authority, and notify the candidates affected that their papers will not be accepted unless satisfactory explanation shall be made within a reasonable time.
“ (b) Penalty for fraud in examinations. A candidate who with fraudulent intent endeavors .to obtain any credential of the department shall be debarred from entering any subsequent Regents examination until admitted by special permission from the department after written application by the principal, and *97 any credentials already issued to such candidate shall be subject to cancellation. This rule includes the use of unfair means to pass an examination, giving aid to or obtaining aid from another in any Regents examination, alteration of any Regents pass card or other credential and intentional misrepresentation in connection with Regents examinations or credentials.” (Regulations of the Commissioner, 8 NYCRR 102.4.)
The court also notes that section 225 of the Education Law defines the act of which infant petitioner is accused as a misdemeanor.
One question raised here is whether the refusal of the assistant superintendent to permit petitioners’ counsel to participate in the conference deprived the infant of her constitutional rights. Respondents rely on Matter of Cosme v. Board of Educ. (50 Misc 2d 344, affd. without opinion 27 A D 2d 905) where the court upheld the Board of Education’s refusal to permit an infant’s parents to be represented by counsel at a conference called to discuss the infant’s temporary suspension from school because of misconduct. Petitioners rely on Madera v. Board of Educ. (267 F. Supp. 356 [U. S. Dist. Ct, S. D. N. Y., Apr. 10, 1967]) where Judge Motley, on a similar set of facts, concluded that the refusal was a violation of the Fourteenth Amendment to the Federal Constitution. Presuming, for purposes of this application, that the Cosme decision is the law, that case is distinguishable from the one at bar. The court there described the conference in question as ‘ ‘ simply interviews or conferences which include school officials and the child’s parents * * * they are purely administrative in nature, and are never punitive.” (Cosme v. Board of Educ., supra, p. 344.) Here punitive sanctions had already been imposed and the apparent, if not the obvious, purpose of the conference was to determine whether the facts justified the action already taken.
In any event, the question regarding the presence of counsel at the conference called by the assistant superintendent does not go to the heart of the matter. The Commissioner’s regulations clearly state that regents examiners must report all cases of apparent fraud to the Department of Education. (8 NYCRR 102.4[a].) The same subsection provides that a candidate’s papers will not be accepted unless a satisfactory explanation is made. While it is not explicitly stated to whom such an explanation is to be made, the inescapable conclusion from a reading thereof is that it is to be made to the Department of Education. Further, while the term “ examiner ” is not defined, the regulations provide that the examination is to be conducted “by the *98 principal or superintendent of the school in which it is held and such assistants of deputies as either shall appoint”. (8 NYCRB. 102.2[a].) Accordingly the acting principal and the teachers herein are examiners within the meaning of the regulations. If the acting superintendent occupied any position with regard to the administration of regents examinations, it is at best one of examiner. Therefore, from a reading of the Commissioner’s regulations, the conference called by the assistant superintendent was not authorized. Despite the statements by the officials of the New York City Board of Education that a finding by the assistant superintendent that infant petitioner did not commit fraud would result in a removal of the sanctions, the New York City Board of Education could not compel the Commissioner of Education to act and any finding of the assistant superintendent would not be binding on the Commissioner under any law, rule or regulation.
The central issue, therefore, is whether the Department of Education violated a right of infant petitioner by acting upon the letter of the acting principal.
In recent opinions, both the Supreme Court of the United States and the Court of Appeals of this State have held that procedural due process must be accorded an infant charged with juvenile delinquency before a Juvenile or Family Court. (Matter of Gault, 387 U. S. 1; Matter of Gregory W., 19 N Y 2d 55.) Both courts, in reaching their separate conclusions, recognized that the proceedings therein involved were civil and not criminal in nature. The Supreme Court further pointed out that the concept of parens patrio, or the right of the State to act in the best interest of an infant does not provide a basis for the State to act arbitrarily and without regard to the individual rights of the infant. (Matter of Gault, supra, p. 1.)
Procedural due process has long been accorded to individuals involved in administrative proceedings in this State. (Matter of Hecht v. Monaghan, 307 N. Y. 461; see Matter of Greenebaum v. Bingham, 201 N. Y. 343.) In view of the Gault and Gregory W. decisions, this court sees no reason why such fair treatment should not be afforded an infant at the hands of an administrative body where serious and stringent sanctions may be imposed. (Cf. Dixon v. Alabama State Bd. of Educ., 294 F. 2d 150.)
The sanctions here imposed are not minor. Infant petitioner may not take a regents examination. Presumptively this includes not only examinations administered to secondary school students but also those administered to one seeking a State *99 license issued by the Department of Education. Clearly, it applies to the regents scholarship examinations and college qualification test. Further, the debarring of infant petitioner from the examinations will result in her not obtaining a State diploma. (8 NYCRR 103.2[b].)
If, by reason of the socio-economic factors of our times an individual may not be deprived of an equal opportunity to obtain whatever education may be provided by a State (see Brown v. Board of Educ., 347 U. S. 483), then a fortiori one may not be arbitrarily deprived of whatever certificate, diploma or other evidence of that education may be provided. Without detracting from the function of education in satisfying the inherent human characteristic to know, it is also the purpose of secondary education to prepare a student for possible future education and his adult life- to the full potential of his capabilities as an individual. Any future employer of infant petitioner, who may require a high school education, and any institution of higher learning to which she may seek admission will not accept her affirmation of her educational attainments without a high school diploma as evidence thereof.
In view of the above, the court concludes that the Department of Education deprived infant petitioner -of heir rights by imposing sanations predicated .solely on the letter of the acting principal without a hearing to 'ascertain the truth of the charges at which she might defend herself with the assistance of counsel.
The court feels compelled to make some comment with regard to the “ confession ” and other .statements made by the infant petitioner to the acting principal. It is not the intention of the court to set out guidelines pursuant to which school authorities may interview a student with regard to cheating and under no circumstances d-oeis the court believe that the rules defined in Miranda v. Arizona (384 U. S. 436) apply here. However, it has been held in Slochower v. Board of Educ. (350 U. S. 551), Garrity v. New Jersey (385 U. S. 493), and Spevack v. Klein (385 U. S. 511), that one involved in an administrative proceeding may not be deprived of his rights under the Fifth Amendment to the Federal Constitution. In view of those decisions and the Gault and Gregory W. decisions (supra), this court questions the efficacy of the statements elicited from infant petitioner, since it appears from the papers presented that the investigation conducted after infant petitioner’s initial explanation was intended to disprove that statement which the school authorities found not credible.
*100 It cannot be stressed too strongly that the determinations made herein are done so in the factual context of the regents examinations and the rules and regulations governing those examinations. This court cannot and does not determine what steps may be taken by local boards of education, school boards, principals, teachers or other school authorities with regard to a student suspected of cheating on examinations other than regents examinations. The petition is accordingly granted.