OPINION OF THE COURT
Robert C. Williams, J.
This is a CPLR article 78 proceeding wherein the petitioners seek to permanently enjoin the respondents from *831 enforcing an order of respondent Blaney, Acting Commissioner of Education, dated August 8, 1979.[1] Petitioners further seek a judgment validating the issuance of certain diplomas by petitioner Board of Education of the North-port-East Northport Union Free School District (Board) to the individual petitioners.
The Board brought this matter on by order to show cause issued by the Honorable Con. G. Cholakis on August 15, 1979. Respondents moved to dismiss same on a number of grounds including the limitation upon the review of legislative acts by way of article 78. In its decision and order of September 18, 1979 this court citing Matter of Town of Arietta v State Bd. of Equalization & Assessment (37 AD2d 431) found that the matter was properly before it. The court further held that the respondents were enjoined from enforcing the order complained of pending the determination herein.
The court sua sponte determined that the respective interests of the individual students should be protected. John Bracken, Esq., was appointed guardian ad litem for the students and permitted to interpose a petition on their behalf.
Pursuant to CPLR 7804 (subd [h]) a trial on the numerous issues of fact presented was held during a one-week period in the summer of 1980. As directed at trial, following the completion of the lengthy transcript thereof the parties presented posttrial memorandums and proposed findings, a further opportunity to respond to the initial submissions was permitted, the case was fully submitted as of January 16, 1981.
Abby and Richard are handicapped within the defini *832 tian of the applicable Federal and State statutes,[2] prior to their graduation in June of 1979 they were students in the school district governed by the Board. At the time in question Abby was 20 years old and attended James E. Allen High School in Dix Hills, New York, operated by the Board of Co-operative Educational Services (BOCES).[3] She suffers from a neurological impairment[4] which allegedly effects her ability to handle arithmetical computations. Richard was 21 years of age in June, 1979.[5] He Was classified by the school district’s Committee on the Handicapped (COH)[6] as trainably mentally retarded[7] and attended James E. Allen School in Melville, New York, also operated by BOCES.
Abby and Richard were assigned individual education plans (IEPs) in compliance with Federal and State statutes.[8] After being recommended for graduation by their respective schools, the COH on March 18, 1979 recommended both Abby and Richard for graduation on the basis of successful completion of their respective IEPs.[9] By resolution of the Board approved June 18, 1979 both Abby and Richard were awarded local high school diplomas.
*833 At the time of the award of diplomas neither student had met the testing requirement set forth in the Commissioner’s Regulations for issuance of diplomas. Section 103.2 of the Regulations of Commissioner of Education (8 NYCRR 103.2) provides in pertinent part:
“(a) Local diploma. In order to secure a local high school diploma, the following requirements must be met:
* * *
“(2) The demonstration of competency in the basic skills: (i) by passing the following examinations:
“(a) effective June 1, 1979 through May 31,1981, either the Basic Competency Test in Reading or the Regents Comprehensive Examination in English, and either the Basic Competency Test in Mathematics or a Regents examination in mathematics”.
Both the Basic Competency Test (BCT) in reading and mathematics were administered to Abby. She successfully completed the English exam but failed the mathematics one. Neither BCT was administered to Richard apparently based on a belief that it would be futile for him to attempt to pass the exams.
Robert R. Spillane, Deputy Commissioner of Education, by way of a letter to Eleanor Roll as President of the Board informed the Board that the award of diplomas to Abby and Richard violated Part 103 of the Commissioner’s Regulations (8 NYCRR Part 103). The letter further indicated that “Any students who have been issued diplomas but not completed all State requirements have invalid diplomas. You are hereby required to provide the Education Department with the names and addresses of any students to whom you have awarded diplomas in violation of State regulations. These students will then be notified by our Department that their diplomas are not valid.”
In response to the above direction the Board by way of letter from Joseph F. Beattie, President, to Commissioner *834 Ambach dated July 24, 1979 respectfully “decline[d] to produce the names of the students to whom these diplomas were awarded.” Thereafter the State Education Department issued an order requiring the Board to submit the names requested.[10]
Both the State and local school district receive Federal monetary assistance.
The petitioners seek relief from said order alleging same to be “arbitrary, capricious, unreasonable and unlawful”. They contend that the respondent in issuing the order complained of and in requiring the passing of BCTs by the individual petitioners as a prerequisite for the award of a high school diploma violated section 11 of article I and section 1 of article XI of the New York State Constitution, section 504 of the Rehabilitation Act of 1973 (US Code, tit 29, § 794), the EHA (US Code, tit 20, § 1401 et seq.), section 1983 of title 42 of the United States Code (this cause of action is derivative of the alleged violations of section 504 of the Rehabilitation Act of 1973 and the EHA), the equal protection and due process guarantees afforded by the United States Constitution.
A number of eloquent and engaging arguments have been propounded by the petitioners touching on broad questions facing the educational community, however it must be emphasized that the decision of this court is meant to speak solely to the factual circumstances presented and the issues revolving around same in respect to the individual petitioners, Abby and Richard. While the issues surrounding the propriety of competency testing in general, and more specifically the testing of handicapped children as a “class” are tangentially addressed by this decision it is not the duty nor the intent of this court to resolve same.
The Legislature of this State is charged with the obligation of providing for the “maintenance and support of a system of free common schools, wherein all the children of this state may be educated.” (NY Const, art XI, § 1; Donohue v Copiague Union Free School Dist., 47 NY2d 440.) The Constitution[11] and the statutes of this State[12] vest *835 the control and management of its educational affairs in the Board of Regents, that power is concomitantly shared with the Commissioner of Education. (Donahue v Copiague Union Free School Dist., supra; Matter of New York City School Bds. Assoc, v Board of Educ., 39 NY2d 111.)
Pursuant to that broad grant of power the Regents and the Commissioner have historically formulated standards for the granting of diplomas. The standards adopted in Part 103 of the Commissioner’s Regulations (8 NYCRR Part 103) cannot be said to be beyond the scope of the power vested in the Regents and the Commissioner.
While the court agrees with the respondents that the powers set . forth above are extremely broad and that the courts have “unalteringly eschewed” making judgment in respect to broad education policy (Donahue v Copiague Union Free School Dist., supra, p 445) it is not contended nor would such a contention be palatable that alleged violations of constitutional or statutory provisions can be hidden behind the cloak of a claim of “educational policy” and as such be beyond judicial review. (James v Board of Educ., 42 NY2d 357.)
The State has a legitimate interest in attempting to insure the value of its diplomas and to improve upon the quality of education provided. Use of competency testing to effectuate the goals underlying those interests is within the discretion of the Board of Regents and the Commissioner.[13] The petitioners contend however that the application of BCT requirements in respect to Abby and Richard violates section 504 of the Rehabilitation Act of 1973 (US Code, tit 29, § 794) in that it denies them a benefit or alternatively that it discriminates against them. The statute provides: “No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or *836 under any program or activity conducted by any Executive agency or by the United States Postal Service.” (Emphasis added.)
The petitioners have failed to convince this court that the denial of diplomas to Abby and Richard on the basis of their failure to meet the testing requirement of Part 103 (8 NYCRR Part 103) would violate section 504.
Webster’s Third New International Dictionary Unabridged defines a diploma as a “document bearing record of graduation from or of a degree conferred by an educational institution”. It cannot be said that the denial of a diploma based on inability to meet the BCT requirements is the denial of a benefit “solely by reason of’ a handicap. An analogy can be drawn to the handicapped person who is wheelchair bound. Section 504 may require the construction of a ramp to afford him access to a building but it does not assure that once inside he will successfully accomplish his objective. Likewise, section 504 requires that a handicapped student be provided with an appropriate education but does not guarantee that he will successfully achieve the academic level necessary for the award of a diploma.
The Supreme Court interpreted section 504 in Southeastern Community Coll, v Davis (442 US 397). While the factual content of Davis is distinguishable from the case at bar[14] the court’s construction of section 504 is pertinent (supra, p 405): “[T]his is the first case in which this Court has been called upon to interpret § 504. It is elementary that ‘[t]he starting point in every case involving the construction of a statute is the language itself.’ * * * Section 504 by its terms does not compel educational institutions to disregard the disabilities of handicapped individuals or to make substantial modifications in their programs to allow disabled persons to participate. Instead, it requires only that an ‘otherwise qualified handicapped individual’ not be excluded from participation in a federally funded program ‘solely by reason of his handicap,’ indicating only that mere possession of a handicap is not a *837 permissible ground for assuming an inability to function in a particular context.” (Emphasis added.) In Kampmeier v Nyquist (553 F2d 296, 299)[15] the Second Circuit stated that the “exclusion of handicapped children from a school activity is not improper if there exists a substantial justification for the school’s policy.” Even if the court were to determine that this situation was within the ambit of section 504, it would be compelled to defer to the discretion of the Board of Regents and the Commissioner in their establishment of educational policy. (Donahue v Copiague Union Free School Dist., 47 NY2d 440, supra; Matter of New York City School Bds. Assoc, v Board of Educ., 39 NY2d 111, supra.) Under the statutes implemented to effectuate the Federal policy enunciated in the EHA the power and the duty is placed upon the State Education Department “[t]o formulate such rules and regulations pertaining to the physical and educational needs of such children as the commissioner of education shall deem to be in their best interests.” (Education Law, § 4403, subd 3.)[16] In light of the above it cannot be said that the respondents in denying diplomas to the individual petitioners would be violating section 504.
Petitioners further allege that the denial of diplomas by the respondent would be a violation of the EHA in that it would deny the individual petitioners a “free appropriate education” as guaranteed under the EHA. “The term Tree appropriate public education’ means special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414 (a) (5) of this title.” (US Code, tit 20, § 1401, subd 18, emphasis added.) As set forth supra, article 89 of the *838 Education Law was promulgated to insure compliance with the EHA, subdivision 3 of section 4403 thereof granting the Education Department discretionary power in the development of regulations providing for the education of handicapped students.
“[T]he Act contemplates that the determination of appropriate educational goals, as well as the method of best achieving those goals, are matters which are to be established in the first instance by the states.” (Battle v Commonwealth of Pennsylvania, 629 F2d 269, 278, supra.) Accordingly, deference should be given to the method employed by the State in attempting to reach their goals. (Battle v Commonwealth of Pennsylvania, supra; Donohue v Copiague Union Free School Dist., 47 NY2d 440, supra.) The Commissioner’s interpretation of the Education Law is certainly entitled to great weight. (Matter of Eisenstadt v Ambach, 79 AD2d 839.)
The EHA does not require specific results (Battle v Commonwealth of Pennsylvania, supra) but rather the availability of a “free appropriate public education”. The award of a diploma has not been shown to be a necessary part of an “appropriate public education” therefore denial of same on the basis of failure to meet BCT requirements does not amount to a violation of the EHA.
The provision of educational services is one of the most important functions performed by a State. (Brown v Board of Educ., 347 US 483.) “But importance of a service performed by a State does not determine whether it must be regarded as fundamental for purposes of examination under the Equal Protection Clause.” (San Antonio Schoo. Dist. v Rodriguez, 411 US 1, 30.) Indeed, education is not a fundamental right[17] invoking the application of the “strict scrutiny” test. (San Antonio School Dist. v Rodriguez, supra; Matter of Levy, 38 NY2d 653; Bukovsan v Board of Educ., 61 AD2d 685.)
The status of the individual petitioners as handicapped does not place them in a suspect classification. (Matter of *839 Levy, supra.) The Court of Appeals, in Matter of Levy (supra, p 658) succinctly addressed the equal protection questions presented herein. “At the threshold of consideration of any equal protection claim is the determination of the applicable standard of review. Handicapped children as such do not constitute a 'suspect classification’ (cf. Matter of Lalli, 38 NY2d 77 [illegitimate children]; Matter of Malpica-Orsini, 36 NY2d 568 [illegitimate children]; contrast Loving v Virginia, 388 US 1 [race]; Hernandez v Texas, 347 US 475 [national origin]; Matter of Griffiths, 413 US 717 [alienage]). Nor is the right to education such a 'fundamental constitutional right’ as to be entitled to special constitutional protection (San Antonio School Dist. v Rodriguez, 411 US 1, 6). Accordingly, the appropriate standard is not the so-called strict scrutiny test or anything approaching it, but rather the traditional rational basis test. (Montgomery v Daniels, 38 NY2d 41, 59; cf. Matter of Jesmer v Dundon, 29 NY2d 5, opp dsmd 404 US 953.)” (Emphasis supplied.)
The petitioners contend that a “middle tier” analysis as enunciated by the Court of Appeals in Alevy v Downstate Med. Center of State of N.Y. (39 NY2d 326),[18] is applicable. In sum the “middle tier” test requires a showing of a substantial relationship to an important governmental interest. (See Craig v Boren, 429 US 190; Alevy v Downstate Med. Center of State of N.Y., supra.)
The court does not agree that the “middle tier” test is applicable. The Appellate Division of this Department, in Lombardi v Nyquist (63 AD2d 1058, 1059, lv to opp den 45 NY2d 710), decided more than two years subsequent to Alevy, reaffirmed the decision in Matter of Levy by holding that “[t]he appropriate standard to be applied in reviewing the application of such legislation [article 89 of Education Law] is ‘not the so-called strict scrutiny test or anything approaching it, but rather the traditional rational basis test’ ”.
The respondents have set forth a number of reasons underlying the development of the BCTs and their use as *840 a standard for the award of a diploma; the improvement of educational services by the detection of areas of deficiency, remediation, protection of the value of high school diplomas. Fully recognizing the policy of noninterference with State educational decisions (San Antonio School Dist. v Rodriguez, 411 US 1, 43, supra; Donohue v Copiague Union Free School Dist., 47 NY2d 440, 445, supra; Lombardi v Nyquist, supra, p 1059) it has not been shown that the implementation of a BCT program and the applicability of that program to the individual petitioners falls short of having a rational basis and thus violates the equal protection clause.
We now turn to the issue of due process. On this point the court finds that the respondents have fallen short of the necessary constitutional requirements.
As discussed more fully above, “[i]t is true that courts will ordinarily defer to the broad discretion vested in public school officials and will rarely review an educational institution’s evaluation of academic performance of its students * * * Notwithstanding this customary ‘hands-off’ policy, judicial intervention in school affairs regularly occurs when a state educational institution acts to deprive an individual of a significant interest in either liberty or property *** It is well established that when such a deprivation occurs the procedural safeguards embodied in the Fourteenth Amendment are called into play, and courts will not hesitate to require that the affected individual be accorded such protection.” (Greenhill v Bailey, 519 F2d 5, 7; see, also, Goss v Lopez, 419 US 565, 574; James v Board of Educ., 42 NY2d 357, supra.)
The first question which must be addressed is whether the individual petitioners have a property or liberty interest in the receipt of a high school diploma which falls within the ambit of the due process protection?
Property interests are not stagnant and fixed concepts but rather “they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings” (Board of Regents v Roth, 408 US 564, 577). It is clear that absent the BCT requirements in Part 103 of the Commissioner’s Regulations there would be no *841 question before this court in respect to the diplomas issued to Abby and Richard. Indeed those diplomas would be issued in the manrier in which the Board has reviewed and issued them presently.
The court believes that Abby and Richard had a legitimate expectation of the receipt of a diploma therefore the diploma represents a property interest for the purposes of the due process protection. (Debra P. v Turlington, 474 F Supp 244; Matter of Goldwyn v Allen, 54 Misc 2d 94.) The petitioners have produced testimony tending to indicate that the denial of a diploma will have grave consequence in respect to the future life chances of the individual petitioners, while those factors come into the balance in determining what standards the respondents must meet the gravity of the deprivation is irrelevant in deciding that the due process clause applies. (Goss v Lopez, 419 US 565, 576, supra.)
Further “[t]he Due Process Clause also forbids arbitrary deprivations of liberty” (Goss v Lopez, supra, p 574). By stigmatizing an individual or imposing an obstacle which forecloses his freedom in pursuing employment opportunities the State deprives a person of a liberty interest. (Board of Regents v Roth, 408 US 564, supra; Greenhill v Bailey, 519 F2d 5, supra.)
The testimony at trial tends to indicate that the denial of a diploma would have an adverse effect upon the future employment opportunities of the individual petitioners.
More importantly the court finds that such denial may stigmatize the individual petitioners. Judge Carr in Debra P. v Turlington (474 F Supp 244, 258) presents a cogent argument addressing this point. “Before discussing the validity issues, the Court must refer to a matter which is at the crux of the controversy between the litigants. The test as legislatively created was to be one of functional literacy. Functional literacy has not been defined in a way which is acceptable to either all educational academicians or the public. The testimony, in fact, indicates that there are at least eleven known definitions of functional literacy. What is functional literacy to one person may not be functional literacy to another person, but it is clear that the term ‘functional illiterate’ has a *842 universally negative inference and connotation. While ‘illiteracy’ is itself a negative and impact ladened word, ‘functional illiteracy’ further compounds these implications by focusing on the individual’s inability to operate effectively in society. * * * As one of the Plaintiffs’ experts commented, students who fail the functional literacy test perceive of themselves as ‘global failures’. Another of the Plaintiffs’ experts testified that the biggest flaw in the Florida program was its name alone. The Court is in complete agreement. Beyond the economic and academic implications of failure on the test, the stigma associated with the term functional illiteracy is the most substantial harm presented.” While Debra P. dealt with functional literacy tests in respect to black students the above discussion is relevant to the case at bar. Will Abby and Richard be labeled as incompetent because of their failure to pass basic competency tests and thus considered unable to function in society?
Chancellor Theodore Black in a letter dated August 16, 1979 stated, “To grant handicapped students a certificate (an inferior academic award) based on attendance or any other academic standard is to brand a group of students as second-rate and incapable of running the race reserved for other students. Furthermore, such a certificate or any other substitute diploma, does not provide the recipient with the same opportunities for gaining employment or college entrance which accompanies a diploma.” In fact a certificate is exactly what the Board of Regents proposes to grant to Abby and Richard. (8 NYCRR 103.5.) Denial of a diploma is a deprivation of liberty, thus the protections afforded by the due process clause are invoked.
“Once it is determined that due process applies, the question remains what process is due.” (Morrissey v Brewer, 408 US 471, 481.) Due process is a practical and flexible concept. (Goss v Lopez, 419 US 565, supra; Morrissey v Brewer, supra.) In determining the applicable requirements the court balances the private interests of the petitioners, the risk of an improper deprivation of such interest and the governmental interest involved. (Mathews v Eldridge, 424 US 319.)
*843 Petitioners request that the court find the BCTs as applied to handicapped students invalid thus violative of the due process clause, in that it does not accurately measure “Basic Competency” in respect to handicapped students. While questions of validity are raised by the record (no clear definition of “Basic Competency”; testimony by Winsor Lott, Chief of the Bureau of Elementary and Secondary Testing Programs, that the handicapped student population was not taken into account in development and construction of the exam; applicability of the American Psychological Association, Standards for Educational and Psychological Tests and compliance therewith), the court in deference to the broad discretionary powers constitutionally and statutorily granted to the Board of Regents and the Commissioner as discussed more fully above, and more importantly due to the rule of judicial restraint does not determine this case on the basis of whether the BCTs are valid in respect to handicapped children.
The court finds that the respondents failed to provide timely notice of the diploma sanction contained in Part 103 of the Commissioner’s Regulations (8 NYCRR Part 103).
The record reflects that Abby and Richard attended public schools for 12 and 15 years respectively. It is apparent that their programs of instruction were not developed to meet a goal of completing a BCT in order to receive a diploma but rather were developed to address individual educational needs. Indeed, since the requirement of BCTs was first noticed to the administrators of their schools in April of 1976 there was no way the developers of their educational programs could have considered the ultimate requirement of passing a BCT and built that goal into their educational programs.
The school district was notified in April, 1976 that the Board of Regents passed a BCT requirement effective June, 1979 as a precondition to the award of a diploma. There appears to have been continuous discussion within the Education Department as to the applicability of the BCT requirement to handicapped students and confusion on the part of the school administration as to such appli *844 cability. In April, 1979 Information Bulletin No. 9, which addressed the BCT in respect to handicapped students, clarified that handicapped students must satisfy the requirements of 8 NYCRR 103.2 to be awarded a diploma. The bulletin further elaborated upon alternative testing procedures for certain handicapped students, none of which are applicable to the individual petitioners.
The petitioners ostensibly contend that the various re-considerations and review mechanisms employed set the date that the court should consider as the point of notice on April, 1979 a few short months prior to the June, 1979 graduation date. The court while recognizing that the procedures followed did not provide for the clearest and most articulate notice considers April, 1976 as the point of notice to the Board. It does not appear that any notice was provided to the individual petitioners or their parents. Article 89 of the Education Law clearly favors a policy of providing notice to the parents of handicapped students of matters which effect their children’s education. (See Education Law, § 4402, subd 1, par b, cl [3], subdcl [c].) The court however does not find the lack of individual notice to the parents dispositive of this point.
The court finds that based on the factual circumstances presented the notice provided was not timely. The denial of a diploma could stigmatize the individual petitioners and may have severe consequences on their future employability and ultimate success in life. Accordingly, early notice should have been provided in order to afford them every opportunity to pass the BCTs:
Doctor Madus, an eminently qualified expert in the area of competency testing, testified that in light of the importance attached to these tests early notice was essential. In response to an inquiry by the court he stated that, “I would like to have seen the students know about that in the middle — sometime in the middle of their elementary school; fourth or fifth grade”. In reviewing the time frame requirement for notice it must be emphasized that while these students participated in a program of instruction in the same basic subjects taught to all students the methods and goals utilized were directed to their individual needs therefore the time frame for notice to *845 them is much more crucial than that for nonhandicapped students in conventional programs.
Robert R. Spillane, Deputy Commissioner of Education, in a memorandum dated August, 1978 states: “1. Early Identification. One of the most important features of the new Regents competency testing program is the early identification of students who need special help in developing their skills in reading, writing, and mathematics. This identification process must begin at the first point of contact between student and school and must continue throughout the student’s years in school. The process should make use of both formal and informal assessment techniques and should lead to a meaningful and effective program of special help.” (Emphasis added.) The necessity of early notice is further emphasized by the following direction contained in Information Bulletin No. 29 dated February, 1980. “The purpose of this bulletin is to inform districts that all children identified as handicapped by Committees on the Handicapped and who exhibit academic competency, must have available to them every educational opportunity to attain a high school diploma. These opportunities include: the handicapped pupil’s full participation in the school-wide administration of the Pupil Evaluation Program (PEP) tests in grades 3 and 6, as well as the preliminary competency tests in grades 8 or 9, appropriate remedial instruction as indicated by the test results, and access to the required curriculum sequence of course work necessary to attain a high school diploma. These opportunities must be made available to all identified handicapped children in any school placement including those conducted by the Boards of Cooperative Educational Services.” (Emphasis added.)
Early notice would allow for proper consideration of whether the goals of the students IEP should include preparation for the BCT and would afford an appropriate time for instruction aimed at reaching that goal. The period of notice provided, in essence less than two school years, was inadequate. The court is not compelled nor is it deemed provident at this juncture to set a specific time period which would be adequate.
*846 Accordingly, the enforcement of the order issued by respondent Blaney dated August 8, 1979 is permanently enjoined. Further the court'finds that the diploma requirement contained in 8 NYCRR 103.2 (b) is improper as to the individual petitioners Abby and Richard.

. That order decreed that: “it is hereby ordered that the Board of Education of the Northport-East Northport Union Free School District transmit to the Commissioner of Education, State Education Building, Albany, New York 12234, by certified mail postmarked not later than 11:00 p.m. on August 17,1979, the full names and residence, addresses of all students to whom high school diplomas were awarded by the NorthportEast Northport Union Free School District in June, 1979, when such students had not met the requirements for a high school diploma set forth in Part 103 of the Regulations of the Commissioner of Education (8 NYCRR Part 103).”

. (Education of All Handicapped Children Act [EHA] [US Code, tit 20, § 1401 et seq.]; Education Law, § 4401.) In order for a State to receive Federal aid it must provide an educational program for handicapped students in compliance with the EHA. (US Code, tit 20, § 1412.) To effectuate same New York passed article 89 of the Education Law. Accordingly, the provisions of article 89 and the regulations promulgated thereunder parallel in substance many of the provisions of the EHA; therefore the court does not feel duty bound in all instances to refer to both statutes.

. As described by Dr. McNally, Director of Pupil Services for Northport-East North-port School District, BOCES offers a “modified” high school program comprised of the standard academic subjects required for a high school diploma plus a vocational component. The educational program provided is apparently geared to the individual student.

. See 8 NYCRR 200.4 (a) (6), which provides for a neurologically damaged child being classified as handicapped.

. Pursuant to section 4401 of article 89 of the Education Law a handicapped individual is entitled to a free education until he attains the age of 21.

. The formation of a COH is mandated for every school district (Education Law, § 4402, subd 1, par b), being charged with the evaluation and placement of handicapped students within their respective school districts. (Education Law, art 89; 8 NYCRR Part 200.)

. See 8 NYCRR 200.4 (a) (1).

. US Code, tit 20, § 1414; Education Law, § 4402.

. It appears that Abby was recommended for graduation in 1978 by her school. However after consultation with her parents as required under statute she remained in school at their request in order to allow her further participation in a vocational program (Arbor). At the time of trial she was employed full time in the Arbor program. *833 Absent the request other parents as set forth above it appears that Abby would have been granted a diploma in 1978 prior to the testing requirement complained of herein.

. See n 1, supra.

. NY Const, art XI, § 2.

. Education Law, § 207.

. Though the testing in question has not been shown to be part of a Federally approved program, statute provides for the availability of Federal financial assistance in instituting competency testing programs. The presence of such a program seemingly indicates the acceptance of competency testing as a legitimate method of improving educational services. (Education Amendment of 1978, § 921 [US Code, tit 20, § 3331].)

. Davis addressed the application of section 504 to a hearing impaired woman’s attempt to gain admission to nursing school. Thus, the distinction between post secondary education and level of educational services provided in the present case.

. In reviewing the denial of a preliminary injunction the court therein held the exclusion of students who were blind in one eye from participation in contact sports by their school did not violate section 504, therefore the petitioners failed to establish the requisite showing of probability of success on the merits.

. See Battle v Commonwealth of Pennsylvania, 629 F2d 269, 272 (discussion of the intent of the EHA and the burden placed upon the State).

. The propositions contained in the discussion of equal protection herein are applicable to both the Federal guarantee of the Fourteenth Amendment and the New York guarantee enunciated in section 11 of article I of the New York Constitution.

. Alevy proposed the “middle tier” test in respect to allegations of “reverse discrimination”.