*99 OPINION OF THE COURT
Albert E. Tait, Jr., J.
Petitioner seeks a judgment pursuant to CPLR article 78 nullifying the determinations of respondent and directing that all references thereto be expunged from petitioner’s record.
Petitioner student has been found guilty by the respondent university of two separate offenses involving academic dishonesty. The first finding was based on petitioner having signed a memorandum admitting that she had collaborated on a term paper. The second finding was the result of a hearing before the academic grievance tribunal. Petitioner alleges that violations of the State Administrative Procedure Act, due process, and respondent’s own rules occurred in reaching these determinations.
I. STATE ADMINISTRATIVE PROCEDURE ACT
Respondent contends that the rules in question are exempt from the requirements of the State Administrative Procedure Act because they are “internal management rules.” Rules “governing student conduct” are “ ‘internal management’” rules. (Matter of Schuyler v State Univ. of N. Y. at Albany, 31 AD2d 273, 276.) As such they are exempt from the rule-making procedures in article 2 of the State Administrative Procedure Act (§ 102, subd 2, par [b]) and from the filing requirements of section 8 of article IV of the New York State Constitution. However, petitioner correctly asserts that article 3 of the State Administrative Procedure Act relating to adjudicatory proceedings is still applicable. The proceedings against the petitioner fail to comply with article 3 of the State Administrative Procedure Act in several regards, including failure to establish procedural rules for appeal (§ 301, subd 3), failure to make a complete record of proceedings, including all evidence presented (§ 302), failure to deliver to petitioner a copy of the final decision, including “findings of fact * * * or reasons for the decision” (§ 307, subd 1), and failure to grant the right to be accompanied by counsel (§ 501).
II. DUE PROCESS
However, even if respondent were correct in his assertion that the requirements of the State Administrative *100 Procedure Act are entirely without application to this proceeding, at tax-supported universities students cannot be expelled, barred or fined without procedural due process. (Matter of Ryan v Hofstra Univ., 67 Misc 2d 651.) Indeed, even respondent’s own rules impose this standard on student disciplinary proceedings.
Although the rules governing due process are less stringent for proceedings involving academic dismissal than for disciplinary matters (Board of Curators of Univ. of Mo. v Horowitz, 435 US 78), nevertheless even minimal procedural due process requires that petitioner be given (1) written notice of the charges against her, (2) a written statement of the fact finders as to the evidence relied on and the reasons for the action taken, and (3) an opportunity to call witnesses and present documentary evidence. (Wolff v McDonnell, 418 US 539.) Moreover, the hearing in the instant case was disciplinary in nature, not academic. The petitioner faced expulsion or suspension for plagiarism and cheating. Here, as in Matter of Ryan v Hofstra Univ. (supra), the petitioner faces a great disgrace which could be a lifetime burden and no academic standards are involved.
In the present case there are a number of departures from due process, including failure to provide a record, failure to give petitioner a written statement of the fact finders, and denial of petitioner’s right to counsel.
Petitioner was never given a written statement as to the evidence relied on by the fact finders nor the reasons for their actions. The report issued by this tribunal was nothing more than minutes of the meeting, summarizing the testimony of the complainant Dr. Cain in six sentences and that of petitioner in two. The report then states that following the testimony, “[t]he Chairman entertained a motion that M[ary] M. * * * be found guilty of the charge made by Dr. Cain. The motion was made and seconded and was approved by a vote of two yes and one no.” This report, which contains no indication as to the evidence upon which they relied and the reasons therefor, was sent to Dr. Warren to form the basis for his decision regarding the appropriate penalty. It is an essential part of a fair administrative hearing that the person making the decisions have the opportunity to review all of the evidence, not *101 merely notes of evidence (Matter of Rothkoff v Ratner, 104 Misc 2d 204).
“‘Determinations subject to judicial review must be based on findings which are sufficient to inform the court and parties as to the findings made, the basis of the findings, and whether the findings are supportable by the evidence (Matter of New York Water Serv. Corp. v. Water Power & Control Comm., 283 N. Y. 23 * * *)’ ”. (Matter of Carroll v Ryan, 25 AD2d 562, 563.) Additionally, petitioner never received a copy of even this inadequate statement.
The absence of a record of the proceedings and a reasoned decision from the fact finders precludes petitioner from obtaining a proper review. (Morrissey v Brewer, 408 US 471, 489; Matter of Rodriguez v Ward, 64 AD2d 792; see, also, CPLR 7804, subd [e].)
Petitioner was granted a hearing where, according to respondent’s rules, she had “the right to testify in * * * her own behalf, to have someone from the Cortland College community present to provide assistance, to call witnesses, and to cross-examine other witnesses”. The question of a right to an attorney at an administrative hearing was discussed in Matter of Rivera v Blum (98 Misc 2d 1002, 1007):
“It has been held, although not universally accepted, that where due process or statute requires a hearing before an administrative body, the right to employ counsel attaches. (Goldberg v Kelly, 397 US 254, 270-271, supra; Matter of Fusco v Moses, 304 NY 424, 433-435; People ex rel. Mayor of City of N. Y. v Nichols, 79 NY 582; Matter of Goldwyn v Allen, 54 Misc 2d 94, 97; cf. Madera v Board of Educ., 386 F2d 778, cert den 390 US 1028; Wasson v Trowbridge, 382 F2d 807.)
“In Hannah v Larche (supra), it was recognized that administrative agencies may exercise investigatory, as opposed to adjudicatory, powers; where an administrative agency makes binding determinations which directly affect the legal rights of individuals, the function is adjudicatory; but where the agency only gathers facts which may subsequently be used as the basis for legislative, executive or administrative adjudicatory action, the function is *102 merely investigatory. This distinction is important, for generally, where the function is merely investigatory, due process does not require the assistance of counsel. (Matter of Groban, 352 US 330; Madera v Board of Educ., supra; Wasson v Trowbridge, supra; Matter of Popper v Board of Regents of Univ. of State of N. Y., 26 AD2d 871.)”
The limitations on representation in the case at bar are very similar to those rejected by the court in Matter of Ryan v Hofstra Univ. (supra, pp 672-673): “(e) The Hofstra review procedure is fatally defective in the context of an expulsion proceeding. Choice of counsel limited to persons who are employees of the administration challenged is an undemocratic and unreasonable limitation, not justified by the harm threatened the student. Once a student is summarily expelled, the school cannot argue, as it has, that its procedure is educational and therapeutic for the student, for patently it is not. Proper representation at this point is vital since further administrative review by the board of trustees is only available to the administration, not the student. The student is left, after the initial review, only with recourse to the courts under article 78 of the CPLR if there is no constitutional inhibition. In that case, the court does not try the facts anew, but only upsets the school determination if it is arbitrary on the record. Without free choice of counsel, the student is deprived of a fair opportunity to participate in the production of a fair, totally arm’s length record, and is accordingly necessarily prejudiced in ultimate judicial review, if any. In Madera v. Board of Educ. of City of N. Y. (386 F. 2d 778, supra), while finding due process did not require right of counsel in a school guidance hearing, the court inferred that it would be in an expulsion matter. (Cf. Matter of Goldwyn v. Allen, 54 Misc 2d 94.)”
Moreover, section 501 of the State Administrative Procedure Act clearly states the position of the New York State Legislature as of 1976: “§ 501. Representation. Any person compelled to appear in person or who voluntarily appears before any agency or representative thereof shall be accorded the right to be accompanied, represented and advised by counsel. In a proceeding before an agency, every party or person shall be accorded the right to appear in *103 person or by or with counsel. Nothing herein shall be construed either to grant or to deny to any person who is not a lawyer the right to appear for or represent others before any agency.”
Respondent, by allowing the right to call and cross-examine witnesses with assistance from a member of the college community, has recognized the importance of the petitioner’s need to have her side of the story heard fully. There is no justification for denying free choice of counsel to a person such as the petitioner, who is facing possible expulsion from college without any further proceedings and for nonacademic reasons which carry a great lifetime stigma.
III. FAILURE TO FOLLOW UNIVERSITY’S OWN RULES
The respondent had adopted and published rules governing student conduct and rules governing procedures, in the event of violations. Having done so, the respondent is bound to follow its own rules. (Matter of Johnson v Smith, 83 AD2d 721.) Once again there have been several departures from respondent’s own rules, including failure to file rules with the Secretary of State, failure to send petitioner a copy of the tribunal’s recommendations and the reasons therefor, and failure to give petitioner a one-week period before signing the first admission.
Although internal management rules are normally exempted from filing with the Secretary of State (NY Const, art IV, § 8; State Administrative Procedure Act, § 102, subd 2, par [b]), respondent in its own rules (ch 310, §§ 310.03, 310.04) required that regulations governing student disciplinary proceedings “shall be filed with the Office of the Secretary of State.” It appears from the record that no such filing has occurred.
The only rules of procedure for the academic grievance tribunal which have been offered in the record include a directive to send to the petitioner a copy of the tribunal’s recommendations “and reasons”. Although due process also mandates such a written statement of reasons, as noted above the report herein offers no reasons for the decision nor was said report sent to the petitioner.
*104 The respondent’s rules of “Procedures for Handling Cheating and Deliberate Plagiarism” are set forth in section 340.02 of chapter 340. The first step in this procedure requires the suspicious faculty member to confront the student with the evidence. If it is claimed that the student has admitted the offense, the rules require the faculty member to “send a memo to the Vice President of Academic Affairs * * * indicating that cheating incident has taken place. The student, after a one-week period must sign the memo”. Regarding petitioner’s first alleged plagiarism incident, respondent admittedly did not follow this procedure. Rather, the petitioner was asked to sign the memo immediately upon the initial confrontation at the office of the faculty member. In defense of this violation respondent contends that it “interprets” this one-week rule not as a required minimum lapse of time before which the student may not be required to sign the memo, but rather as a maximum outside time limit, “a deadline within which students must decide if they will admit the charges or request a hearing”. Thus, says respondent, this rule “permits a student to sign the memorandum anytime within the week”.
In the first place, the rule in question is clear on its face and is not ambiguous, vague or of doubtful meaning. Thus there is no need nor authority for the agency to “interpret” or “construe” the rule (McGoldrick v Family Fin. Corp., 287 NY 535; 2 NY Jur 2d, Administrative Law, § 80). Nevertheless, even giving respondent the benefit of any doubt and accepting its own interpretation of its rule (Matter of Johnson v Joy, 48 NY2d 689), it is clear that in petitioner’s second alleged cheating incident the respondent still failed to comply with its own interpretation of the rule, by inviting petitioner to sign the memo on November 30, 1982, more than one week after its submission by Dr. Cain.
One other area of respondent’s rules which deserves comment is section 340.02 (2) which directs the academic grievance tribunal “to determine whether or not the student’s guilt has been established beyond a reasonable doubt.” Ordinarily an administrative agency would not be held to a standard of proof beyond a reasonable doubt. But having once established that as its own standard, respon *105 dent is bound to follow its own rules and therefore must meet this standard of proof. (Matter of Johnson v Smith, supra.) In the instant case, petitioner was found guilty by a vote of two to one. While it might be argued that such a vote is satisfactory evidence of proof beyond a reasonable doubt (see People v DeCillis, 14 NY2d 203; People v Sanabria, 42 Misc 2d 464), where, as here, there is no record of the proceedings, it is impossible for the court to determine whether respondent has complied with its own rule regarding standard of proof.
Additionally, the vote of two to one fails to meet the statutory requirements of section 41 of the General Construction Law: “§ 41. Quorum and Majority. Whenever three or more public officers are given any power or authority, or three or more persons are charged with any public duty to be performed or exercised by them jointly or as a board or similar body, a majority of the whole number of such persons or officers, at a meeting duly held at a time fixed by law, or by any by-law duly adopted by such board or body, or at any duly adjourned meeting of such meeting, or at any meeting duly held upon reasonable notice to all of them, shall constitute a quorum and not less than a majority of the whole number may perform and exercise such power, authority or duty. For the purpose of this provision the words ‘whole number’ shall be construed to mean the total number which the board, commission, body or other group of persons or officers would have were there no vacancies and were none of the persons or officers disqualified from acting.” The tribunal herein consisted of four members, plus an administrator with tie-making and tie-breaking authority. Thus, a minimum vote of three would be required for this body to take any action (2 NY Jur 2d, Administrative Law, § 68).
While an administrative agency or commissioner may delegate some of his powers (e.g., the actual conduct of a hearing and the taking of evidence may be delegated to subordinates) matters of judgment or discretion usually may not be. (2 NY Jur 2d, Administrative Law, § 69; Matter of Kilgus v Board of Estimate of City of N. Y., 308 NY 620; Nemeroff Realty Corp. v Kerr, 38 AD2d 437, affd 32 NY2d 873.) “An administrative agency may not abdi *106 cate its duty to determine the sufficiency of evidence, or its decisional function. And an administrative agency may not delegate its quasi-judicial and discretionary function to persons who are neither officials nor employees of the agency or of the governmental body of which the agency is an arm.” (2 NY Jur 2d, Administrative Law, § 69, pp 98-99.)
The tribunal to which respondent delegated the authority to determine whether a student’s guilt had been established beyond a reasonable doubt included two students, who clearly are neither officials nor employees of the agency. Such a delegation by respondent of a discretionary and quasi-judicial function was improper.
Based on the findings and principles set forth above, it must be concluded that respondent’s determinations of cheating on the part of the petitioner must be annulled and all references thereto expunged from her record.
Motion for judgment pursuant to CPLR article 78 is granted.