Honorable Carl B. Bledsoe Speaker of the House Colorado House of Representatives State Capitol Denver, Colorado 80203
Dear Speaker Bledsoe:
I am writing in response to your request for a formal legal opinion regarding whether or not the state can mandate minimum standards at various levels of K-12 education, including high school graduation. Your request poses the question of whether the state legislature has authority to impose academic and nonacademic requirements as a condition of promotion at various levels of K-12 education and/or as a condition of receiving a high school diploma.
QUESTIONS PRESENTED AND CONCLUSIONS
Your inquiry raises two issues:
1. Does a state have authority to impose academic and nonacademic requirements as a condition for promotion at various levels of K-12 education and/or as a condition of receiving a high school diploma?
 A state has authority to impose academic and nonacademic requirements as a condition of promotion at various levels of K-12 education and/or as a condition of receiving a high school diploma, as long as constitutional rights of due process and equal protection are observed.
2. Does the Colorado Constitution vest exclusive authority to impose such requirements in the local school district board of education directors?
 Local school district board of education directors have authority to impose such requirements locally subject to preemption by the state legislature.
ANALYSIS
a. Authority to mandate minimum standards. Students have both a property and liberty interest in a high school diploma, at least where, as in Colorado, free public schools are guaranteed and school attendance is required. Goss v.Lopez, 419 U.S. 565 (1975). These interests extend to promotion within various levels of K-12 education. SeeSandlin v. Johnson, 643 F.2d 1027 (4th Cir. 1981). Public education is not, however, a fundamental right triggering strict scrutiny. San Antonio Independent School Districtv. Rodriquez, 411 U.S. 1, 35-40 (1973). Due process and equal protection therefore require only that the decision to impose conditions on promotion within the various levels of K-12 education and/or on receipt of a high school diploma be rationally related to a permissible governmental purpose, except where a protected class triggers a heightened level of scrutiny.
Courts in other jurisdictions have held that a state has a legitimate interest in ensuring the value of a diploma and in improving the quality of education required. Board ofEducation of Northport v. Ambach, 107 Misc.2d 830,436 N.Y.S.2d 564, 569 (1981). Courts have held that these goals can be accomplished by requiring graduating students to attain minimal skills. Brookhart v. Illinois State Board ofEducation, 697 F.2d 179 (7th Cir. 1983). Such minimum requirements may be imposed as a condition of promotion at lower levels of K-12 education as well as a condition of graduation from high school. Sandlin v. Johnson, supra
(upholding denial of promotion to second grade students based on failure to complete the requisite level of a required reading series).
Once the state's interest in imposing minimum standards has been shown to be rationally related to a legitimate governmental purpose, a second level of constitutional analysis is required. The type of standards, procedures by which the standards are imposed, and the impact on the students also must not violate due process and equal protection. Moreover, where the students belong to a protected class, equal protection analysis of these factors requires a heightened level of scrutiny.
Generally, courts will defer to educators' decisions involving academic evaluation, Board of Curators of University of Missouri v. Horowitz, 435 U.S. 78, 90-91 (1978). However, where minimum requirements include competency testing, due process and equal protection require that the test be valid both as to content and as to procedure. First, the test must be a fair measure of what has been taught, Debra P. v. Turlington,644 F.2d 397 (5th Cir. 1981). Second, the test must reasonably evaluate the skill objectives established. Debra P. v.Turlington, 474 F. Supp. 244 (M.D. Fla. 1979)remanded on other grounds, 644 F.2d 397 (5th Cir. 1981) (relying in part on an analogy to the Supreme Court's holding inGriggs v. Duke Power Co., 401 U.S. 424 (1971), that tests for purposes of employment which have a discriminatory impact must be related to job qualification or performance). Finally, the test must be accurate in its measurement.Brookhart v. Illinois State Board ofEducation, supra. For example, the content of a competency test need not be altered in order to accommodate handicapped students, but the school is required to administer a test with appropriate modifications so that an otherwise qualified handicapped student is able to disclose the degree of learning he or she actually possesses. Brookhart v. IllinoisState Board of Education, supra, at 184; section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Exceptional Children's Educational Act, C.R.S. 1973, 22-20-101et seq. (as amended). Due process also may entitle a failing student to opportunities of reexamination.See Tyler v. Vickery, 517 F.2d 1089, 1103-04
(5th Cir. 1975), cert. denied, 426 U.S. 940 (1976) (a right of reexamination to law graduates who fail the bar examination was held to satisfy due process requirements).But see Younger v. Colorado State Board of LawExaminers, 625 F.2d 372 (10th Cir. 1980) (there is no right to unlimited reexamination for bar applicants).
Minimum requirements that do not involve competency testing also must be reasonable and cannot be imposed arbitrarily.Department of Institutions v. Bushnell,195 Colo. 566, 579 P.2d 1168 (1978). The court in Bushnell
held that a student who completed required units of academic credit while in the custody of the Department of Institutions could not be denied a diploma because he had not met a requirement that a student complete his final semester at the high school.
No matter what type of standards are imposed, courts have held that due process requires that adequate notice of additional requirements for graduation be given to students and parents.Board of Education of Northport v. Ambach,supra. The period of notice required may vary according to circumstances including, for example, the existence of a protected class. Id. at 574. The time frame is more critical for handicapped students than for nonhandicapped students. Less than two years notice was held inadequate for handicapped students, but three years notice was held sufficient.Id. at 593. See also Brookhart v.Illinois State Board of Education, supra, at 187 (one to one and one-half years notice was insufficient for handicapped students).
Special considerations arise and temporarily may prohibit minimum standard requirements where past racial discrimination has been found to exist within the school system . The court in DebraP. v. Turlington., 644 F.2d 397 (5th Cir. 1981), found that a minimum competency test diploma requirement violated equal protection due to perpetuation of the effects of past purposeful discrimination. Test results showed that the scores of black students were significantly lower than those of white students. The Fifth Circuit held that the state could not condition receipt of a high school diploma on a minimum competency test until it had demonstrated that the racially discriminatory impact was not due to the deprivation of the dual school system years.Id. at 408.
Similarly, the court in Anderson v. Banks,520 F. Supp. 472 (S.D. Ga. 1981), held that diploma test requirements could not constitutionally be imposed on students who had attended classes in a dual system. The court further held that, where a dual system existed until the 1971-72 school year, diploma test requirements could not be imposed until at least 1983.
A dual system was found to exist within the Denver, Colorado school district. Keyes v. School District No. 1,413 U.S. 189, 213 (1973). The courts have neither relinquished jurisdiction over the case nor yet found that a unitary school system exists. Keyes v. School District No. 1,540 F. Supp. 399 (D. Colo. 1982). Thus, any attempt to implement minimum standards through competency testing should be monitored carefully for evidence of discriminatory impact.
Upon the basis of the foregoing analysis, I conclude that a state has authority to impose academic and nonacademic requirements as a condition of promotion at various levels of K-12 education and/or as a condition of receiving a high school diploma, as long as constitutional rights of due process and equal protection are observed.
b. State versus local authority to mandate minimumstandards. Although I have concluded that a state may mandate minimum standards for various levels of K-12 education, including graduation, section 15 of article IX of the Colorado Constitution raises the question of whether authority to mandate standards resides solely in the local school district board of education directors. My conclusion is that it does not.
Section 2 of article IX of the Colorado Constitution requires the general assembly to establish a uniform system of free public schools:
 The general assembly shall, as soon as practicable, provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state, wherein all residents of the state, between the ages of six and twenty-one years, may be educated gratuitously. One or more public schools shall be maintained in each school district within the state, at least three months in each year; any school district failing to have such school shall not be entitled to receive any portion of the school fund for that year.
(emphasis added).
Section 15 requires the general assembly to legislate the organization of school districts and provides that the district directors shall have control of instruction locally:
 The general assembly shall, by law, provide for organization of school districts of convenient size, in each of which shall be established a board of education, to consist of three or more directors to be elected by the qualified electors of the district. Said directors shall have control of instruction in the public schools of their respective districts.
(emphasis added).
The use of the words "uniform system" in section 2 of article IX
of the Colorado Constitution implies that the general assembly retains ultimate control over the state educational system. Section 15 does not state that directors shall haveexclusive control over instruction. Since the general assembly "may enact any law not expressly or inferentially prohibited by the constitution of the state or of the nation,"People v. In the Interest of Y.D.M., 197 Colo. 403,407, 593 P.2d 1356 (1979) (upholding C.R.S. 1973, 22-33-104
(Supp. 1982), which provides for compulsory school attendance), the legislature retains authority to mandate minimum standards. Organization of the school districts as provided for in section15 of article IX of the Colorado Constitution is merely a convenient method through which the state effectuates its educational policy. Hazlett v. Gaunt, 126 Colo. 385,392, 250 P.2d 188 (1952).
Generally the legislature has authorized local school district boards of education "to determine the educational programs to be carried on in the schools of the district. . . ." C.R.S. 1973,22-32-109(1)(t). However, the legislature presently mandates certain minimum requirements as to what must be taught, including the history and civil government of the state and of the United States, C.R.S. 1973, 22-1-104, honor and use of the United States flag, C.R.S. 1973, 22-1-106, United States Constitution, C.R.S. 1973, 22-1-108, and the effects of the use of alcohol, C.R.S. 1973, 22-1-110 (Supp. 1982).
Upon the basis of the foregoing analysis, I conclude that local school district board of education directors have authority to impose minimum requirements locally subject to preemption by the state legislature.
SUMMARY
In conclusion, it is my opinion that local school district board of education directors have authority locally, subject to preemption by the state legislature, to impose academic and nonacademic requirements as a condition of promotion at various levels of K-12 education and/or as a condition of receiving a high school diploma, provided the requirements of due process and equal protection are observed.
Very truly yours,
 DUANE WOODARD Attorney General
EDUCATION DUE PROCESS EQUAL PROTECTION
Colo. Const. art. IX, secs. 2 and 15
HOUSE OF REPRESENTATIVES
Local school district board of education directors have authority locally, subject to preemption by the state legislature, to impose academic and nonacademic requirements as a condition of promotion at various levels of K-12 education and/or as a condition of receiving a high school diploma, provided the requirements of due process and equal protection are observed.