Deborah BROOKHART, Jenny Buckley, a minor, by Dolores Buckley, her mother and next friend, James Granderson, Jeffrey McNabb, Judy Sleeth, Ellen Ioerger, Kenneth Gallagher, Douglas Westhoff, Michael Livingston, Cindy Phillips, Michael Mudd, a minor, by Sandra Mudd, his mother and next friend, Donald Shea, and Scott Ridge, Plaintiffs,

v.

ILLINOIS STATE BOARD OF EDUCATION, Donald Gill, State Superintendent of Education, Board of Education, Peoria School District # 150, Peoria County, Illinois, Harry Whitaker, individually and as Superintendent of Peoria School District # 150, Defendants.

No. 81–3089.

United States District Court, C. D. Illinois.

March 23, 1982.

Gary E. Kerr and Marilyn F. Longwell, Linda Ganski, Guardianship & Advocacy Commission, Springfield, Ill., for plaintiffs.

Robert S. Bell, Jr. and Jane Lynk, Asst. Attys. Gen., Springfield, Ill., for Illinois State Board of Education and Donald Gill.

Julian E. Cannell, Peoria, Ill., for Board of Education, Peoria School District # 150, and Harry Whitaker.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

This case is proceeding[1] as a judicial review under § 1415(e)(2) of Title 20, United States Code, of an Administrative Order[2] issued May 8, 1981, over the signature of Donald G. Gill, State Superintendent of Education of Illinois. It involves the propriety of denial of high school diplomas to certain plaintiffs, all of whom were exceptional students in the special curriculum on individual educational plans, because of individual learning disabilities and/or other handicaps. Such denial of diplomas by Peoria School District # 150 to eleven plaintiffs was because, though meeting other requirements for graduation, they failed to pass a Minimal Competency Test (M.C.T.). They were each tendered, instead, a Certificate of Program Completion.[3]

The material facts are not in dispute. Development of the Peoria M.C.T. program began in the spring of 1974, and was developed in the ensuing years, through 1977. In February of 1978, the District # 150 School Board formally adopted a policy requiring all students to pass examinations in "minimal" reading, language arts, and mathematics, as a graduation requirement. This testing program was first implemented

1. Other portions of an Amended Complaint filed May 22, 1981, were stricken on motion of defendants, by a written order filed June 3, 1981.

2. One Administrative Order discussed and ruled upon the general subject involved. It had attached to it 15 individual orders treating with the individual plaintiffs, identified by numbers SE–36–80 through SE–64–80. Apparently 14 joined in this suit as plaintiffs.

3. Three of the 14 plaintiffs were not otherwise ready to graduate, being in lower grades.

with the graduating class of 1980, and the first qualifying M.C.T. was given in the spring of 1979, when the 1980 graduates were juniors. Under the M.C.T. program, high school students have five opportunities to pass the three-part test before their scheduled graduation.

The test is given each semester. Once a part of the test is passed, that part need not be retaken. Any student who does not achieve a score of 70% on any of the three parts fails that part, but is eligible to retake that part of the test each time it is given, until he or she passes or becomes 21 years of age. Refresher materials and course work are made available to all students who need them, following each administration of the test. The teachers of the refresher courses receive a detailed result sheet for each student, showing the areas of study needed by that student. Students who don't pass, but otherwise qualify for graduation, may receive a Certificate of Program Completion at graduation time, but may also continue taking the M.C.T. until age 21, and can also receive the standard diploma if and when the final remaining part of the M.C.T. is passed. Severely mentally retarded and some autistic students may be exempted from taking the M.C.T., upon parental request; but they do not receive diplomas, and the parent is so notified when exemption is sought.

During the 1978/79 and the 1979/80 school terms, eleven of the twelve petitioners in the State administrative proceeding, who anticipated graduation in 1980, had taken the M.C.T. one or more times. Several passed one or more parts, but none passed all three parts. Consequently, none was awarded a diploma. Several received "Certificates" and some are continuing efforts to acquire sufficient knowledge to pass the M.C.T. before reaching age 21. As noted above, the areas of knowledge tested are basic mathematics skills, elementary grammar and language arts, and functional reading.

School District # 150, when the M.C.T. policy was adopted in the spring of 1978, and thereafter, undertook to notify all students of the additional graduation requirement. Circulars were distributed in the schools, mailings were made to parents, and repeated announcements were made through all of the mass news media. While Superintendent Gill found that "the record does clearly establish how well these efforts succeeded," there is neither evidence nor contention that any plaintiff here did not know of the graduation requirement of passing the M.C.T. more than a year before his or her scheduled graduation.

The State Superintendent's order decided (1) that the State Board of Education had jurisdiction of the matter; (2) that the Peoria Board had the right to impose reasonable additional standards for graduation from high school with a regular diploma; (3) that neither the federal Education for All Handicapped Children Act (20 U.S.C. § 1401 ff.) nor § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) prohibits local school districts from requiring that exceptional students meet all otherwise reasonable standards for graduation, including, on its face, the M.C.T.; (4) that federal law requires that school districts make reasonable modifications to tests such as the M.C.T., in order to minimize the effect of an individual student's handicapping condition; and (5) that Peoria District # 150 violated the "due process" rights of the plaintiff students, who anticipated graduation in 1980, by failing to give them adequate and timely notice that the M.C.T. would be a prerequisite to receipt of a diploma. It ordered issuance of "regular high school diplomas," in a manner consistent with the opinion and the individual orders attached thereto. Eleven of the individual orders directed that Peoria School District # 150 award the individual student involved "a diploma as a certificate of graduation, which diploma shall be identical in all respects to those awarded to students who have satisfactorily completed all of the requirements in the standard educational program, including the satisfactory completion of the Minimal Competency Test."

The jurisdiction in this court derives from the Education of All Handicapped Children

Act (20 U.S.C. § 1401 ff.), and § 1415(e)(2) thereof provides that the court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court considers appropriate." [4]

Plaintiffs ask the court to sustain that part of the Administrative Order directing the issuance of diplomas to certain plaintiffs and requiring appropriate modification of the M.C.T. for handicapped students, but also to direct School District # 150 to cease using the M.C.T. unless it is modified for specific handicapping conditions of handicapped students, and to direct the State Board of Education and Superintendent Gill to modify the Administrative Order to find the Peoria M.C.T. invalid, and to "promulgate guidelines to ensure appropriate validation and modification of minimal competency tests."

The State Board of Education and Superintendent Gill ask that the Administrative Order be upheld and that Peoria School District # 150 and its Superintendent Whitaker be directed to implement it.

The Board of Education of School District # 150 and Superintendent Whitaker ask that the court affirm the decision of the State Board (Superintendent) upholding the validity of the M.C.T. program as such; that an opportunity be given to two named students to retake the M.C.T. test, with the modifications which were requested; and that it reverse the order for issuance of diplomas to certain plaintiffs; or, in the alternative, if the court agrees that insufficient notice was given, that it order further opportunities for remediation programs and further opportunities for retaking the M.C.T.

■ The court is satisfied that local boards of education and their staffs have the right, if not a positive duty, to develop reasonable means to determine the effectiveness of their educational programs with respect to all individual students to whom they issue diplomas, and that the M.C.T. program here is a reasonable means. Nothing in federal or state law stands in the way. The court finds Superintendent Gill's discussion and analysis on this score to be sound, and affirms Divisions I, II and III of his Opinion. Plaintiff's arguments that statutes are violated here is not supported by the cases cited, and the argument that the Peoria M.C.T. is scientifically invalid is simply not persuasive. Perhaps no test of human beings by human beings can always be scientifically exact, but that is not the measure. It is a reasonable test of the accomplishment of the school system in imparting basic knowledge to all its students, and unless some such measure is permitted, no certification of graduation from an educational program can have any meaning whatsoever, to the student or to others, as the notice of educational attainment it is meant to be.

■ Plaintiffs also proceed upon a basic fallacy in arguing that such a test must be modified to take account of lack of mental ability or capacity. It is certainly true that giving a blind person a test from a printed test sheet discloses only his handicap and nothing of his knowledge. To discover a blind person's knowledge, a test must be given orally or in braille, if appropriate. This, however, certainly does not mean that one can discover the knowledge or degree of learning of a mentally impaired student by modifying the test to avoid contact with the mental deficiency. To do so would simply be to pretend that the deficiency did not exist, and to fail completely to measure the learning. A diploma issued as a result of passing such a modified test would be a perversion of the program to lend meaning to the diploma as a record of educational achievement. The extent of the modification necessary to avoid the degree of learning deficiency would simply measure the

---

4. What constituted the "records of the administrative proceedings," who should produce them here, and how they should be handled, was finally worked out in an Order agreed upon by the parties and filed February 9, 1982. No additional evidence has been tendered by any party.

pretense and the degree of the perversion of the program.[5] This position does not involve any lack of compassion or feeling for people living with serious handicaps; it simply involves the avoidance of pretense, the integrity of a knowledge-testing program, and reserves some meaning for a high school diploma [6] in relation to the attainable knowledge and skills for which the schools exist.

This seems to leave for consideration only the propriety of the State Superintendent's orders that regular high school diplomas be awarded, without further qualification, to the eleven plaintiffs. Such orders are based on the decision that those students have met all the state and local requirements for graduation, *except* passing the M.C.T. (which requirement in these cases is found to amount to a denial of due process of law because of inadequate advance notice).

School District # 150 argues that the State Board lacks authority to issue diplomas, which is clearly true. Thus, this argument goes, ordering award of same is an inappropriate remedy, by accomplishing indirectly what can't be done directly. However, School District # 150 concedes that all other graduation requirements have been met by these eleven students, and thus, if the M.C.T. program is constitutionally invalid as applied to these students, there is no impediment to issuance of the diplomas. Accordingly, it would seem that this argument of inappropriate remedy is largely semantical in this case. The real issue here is whether the M.C.T. program is violative of the due process rights of these students. If so, award of diplomas on order of court is admittedly appropriate. If not, the administrative orders for award of diplomas will be reversed.

Superintendent Gill correctly states in Division V of his Opinion, on the basis of *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), that for due process to come into play, in a noncriminal situation, a person must have either property or liberty interests at stake; and, on the basis of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), that once it is determined due process applies, the question remains what process is due. He suggests a property interest in a high school diploma because of the expectancy created by non-failing completion of ten years of schooling, but decides definitely:

"Given the importance that society places on receipt of a high school diploma for social and economic advancement, it is obvious that the lack of a high school diploma stigmatizes the individual. Petitioners have a liberty interest in being free of the stigma associated with being denied a regular high school diploma."

On the basis of these perceived principles of law and known facts, Superintendent Gill says:

"In the current situation, the petitioners were entitled to notice of the particular goals and objectives of Minimal Competency Test that would allow a sufficient period of time in which to be exposed to the materials necessary to pass the Minimal Competency Test. *Debra P. v. Turlington*, 474 F.Supp. [244] 267;

---

**5.** As of September 25, 1981, since this case was filed, the School Code of Illinois has been changed to prohibit denial of a general diploma on the basis of failing a minimal competency test, when such failure can be "directly related to the student's handicapping condition." This presumably does not mean that a person who knows nothing, due to total inability to learn, must receive a high school diploma. Exactly what it does mean should be decided, first at least, by the educators and the courts of Illinois. However, counsel for School District # 150 now concede that two plaintiffs suffer physical difficulties which may impair their ability to disclose their knowledge under the normal conditions of administration of the test. They should be permitted to take the test, with such modifications of conditions as will minimize the effect of such difficulties, and this litigation should not delay such an offer to them. Both, however, are among the eleven to whom the State Superintendent has ordered diplomas issued.

**6.** "Diploma" is the word used by all involved in this case as meaning the regular and usual certificate of graduation from high school, having met all requirements.

*Board of Education of Northport—East Northport School District v. Ambach, supra.* [107 Misc.2d 830, 436 N.Y.S.2d 564 (1981)]

"The record demonstrates that this standard was not met. Peoria District # 150 violated petitioners due process right to adequate and timely notice. Consequently, Peoria may not require the petitioners to pass the Minimal Competency Test, or any portion thereof as a prerequisite for receiving a regular high school diploma."

■ It would seem apparent that the "particular goals and objectives" of *any* such test would be to discover as well as possible whether the student tested possessed the degree of the knowledge considered minimal in the subject matter involved in the test. There is no indication here that any plaintiff, student, or parent didn't know precisely that objective at least a year before it became a factor in his or her graduation, and they also knew that passing the M.C.T. test would be required for graduation at least that long. The other factor is said to be allowance of "a sufficient period of time to be exposed to the materials necessary to pass the Minimal Competency Test." The State Superintendent notes that, "While the degree of exposure varied, the record reflects the individual petitioners lacked exposure to as much as 90 percent of the material tested in the Minimal Competency Test." Yet it is perfectly clear from the record that the only possible reason for any such lack of exposure to basic materials in the standard curriculum was the "individual educational plan" of each exceptional student, based on his or her individual handicapping condition, which had been determined, for one reason or another, to make such exposure inappropriate.

In other words, *for example*, because of a diagnosed mental condition making it impossible or detrimental for a certain boy to wrestle with basic arithmetic, that subject matter is left out of his individual educational plan, in an effort to give him the benefit of as much of an enriching educational experience as will be worthwhile to him, and not clutter it with subject matter which would be harmful or simply worthless to him. The reasoning here under review, however, would imply that such a student would be entitled to extended notice that lack of arithmetic would prevent receipt of a diploma, and, specifically here, that absence of several years of notice (or notice for the period necessary to be "exposed" to arithmetic) must make him eligible for the same diploma as received by all the students who were proficient in basic mathematics. It appears to this court that this is a misunderstanding and debasement of the concept of due process of law. As noted earlier, a local school board requirement of a minimal standard of learning for graduation is completely legitimate, and due process of law does not require pretending that such standard has been achieved by a person whose handicap clearly makes attainment of that standard impossible or inappropriate in the overall interest of that person. Also, as noted earlier, this obviously is to be distinguished from the case where testing conditions are inappropriate because they fail to test a level of learning by making it impossible or extra difficult for the student being tested to disclose the degree of learning he actually does possess. It seems clear this latter is no longer the problem here, as it apparently was earlier. (See note 5.)

It certainly is not denied that some stigma may attach in some circles to failure of a high school student to achieve a high school diploma, the avoidance of which stigma may be a liberty interest, and that the expectancy of a diploma by one reaching his or her senior year in high school may amount to a property interest, which would make *arbitrary* denial by school authorities a violation of the federal constitutional right to due process of law. That is true regardless whether the student involved has any handicapping condition *or has no handicapping condition*. It simply has nothing whatsoever to do with the legitimacy of a minimal competency test that is reasonably designed to test for a basic level of learning which a school district wishes to make cer-

tain it imparts to all those who receive its diploma. The means to avoid such stigma exists in attainment of the necessary knowledge. If capacity for such does not exist, the law does not require pretense to the contrary. To the extent that any dicta in prior published judicial decisions cited appear to suggest the contrary, their holdings are simply not considered apposite to this situation because of numerous factual distinctions, and none is in any sense controlling.

Accordingly, IT IS ORDERED that the individual orders of the State Superintendent of Education, directing Peoria School District # 150 to issue diplomas to the eleven plaintiffs in this case, are REVERSED and CANCELLED.

IT IS FURTHER ORDERED that the Administrative Order here under review is in all other respects AFFIRMED.