Deborah BROOKHART, et al., Plaintiffs-Appellants, Cross-Appellees,

v.

ILLINOIS STATE BOARD OF EDUCA-TION, et al., Defendants-Appellees, Cross-Appellants.

Nos. 82–1659, 82–1718.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1982.

Decided Jan. 3, 1983.

Gary E. Kerr, Kerr & Longwell, Springfield, Ill., Marilyn Longwell, Kerr & Longwell, Chicago, Ill., for plaintiffs-appellants, cross-appellees.

Rosalyn B. Kaplan, Asst. Atty. Gen., Chicago, Ill., Julian E. Cannell, Kavanagh, Scully, Sudow, White & Frederick, Peoria, Ill., for defendants-appellees, cross-appellants.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and MAROVITZ,* Senior District Judge.

* The Honorable Abraham Lincoln Marovitz, Senior District Judge for the Northern District of Illinois, is sitting by designation.

CUMMINGS, Chief Judge.

Plaintiffs are fourteen handicapped[1] elementary and secondary students who are challenging a Peoria School District (School District) requirement that they pass a "Minimal Competency Test" (M.C.T.) in order to receive a high school diploma. After a hearing, the Illinois State Board of Education (State Board) issued an Administrative Order (A–46 to A–58) in which the State Superintendent of Education decided in favor of eleven of the plaintiffs, stating:

(1) The State Board of Education has jurisdiction of this matter, (2) [The] Peoria Board of Education [has] the right to impose reasonable additional standards for graduation with a regular high school diploma, (3) Neither the *Education for All Handicapped Children Act,* (20 USC 1401 et seq.), nor Section 504 of the *Rehabilitation Act of 1973,* (29 USC 794), prohibit local school districts from requiring that exceptional students meet all otherwise reasonable standards for graduation including, on its face, the Minimal Competency Test, (4) Federal law requires that school districts make reasonable modifications to tests such as the Minimal Competency Test in order to minimize the effect of an individual student's handicapping condition, (5) Peoria District # 150 violated the "due process" rights of the petitioners by failing to give them adequate and timely notice that the Minimal Competency Test would be a prerequisite to the receipt of a diploma. Accordingly, the Board of Education of Peoria District # 150 is ordered to issue the petitioners regular high school diplomas in a manner consistent with this opinion and the individual orders attached hereto.

The State Superintendent also found that three of the plaintiffs did not have standing to challenge the M.C.T. An appeal by plaintiffs and the Peoria School District was taken to the district court[2] which held that there was no due process violation and reversed the order directing the School District to issue diplomas.[3] We reverse.

In the spring of 1978, the School District decided to require all students eligible for graduation in the spring of 1980 to pass an M.C.T. as a prerequisite to receipt of a diploma. The test is given each semester. It contains three parts—reading, language arts, and mathematics—and a student must score 70% on each part in order to receive a diploma. If a student fails any particular part, he is eligible to retake that part until he passes or becomes 21 years of age. Refresher courses are available during the school term and over the summer, though the summer program was on a tuition basis and scheduling problems made it impossible for a student to attend refresher courses in all three areas. Students who do not pass, but otherwise qualify for graduation, receive a Certificate of Program Completion at graduation time, and may continue to take the M.C.T. until age 21.

1. Plaintiffs manifested a broad spectrum of handicapping conditions. One student was physically handicapped, one was multiply handicapped, and four were educably mentally handicapped. The other eight were learning-disabled. (Pl.Br. 6.)

2. Plaintiffs asked the court to sustain the order directing issuance of the diplomas and requiring appropriate modification of the M.C.T. for handicapped students, but also sought an order invalidating the M.C.T. and promulgating validation and modification guidelines. The State Board asked the district court to uphold the order and direct the School District to implement it. The School District asked the district court to affirm the portion of the order upholding the facial validity of the M.C.T. program but reverse the order insofar as it mandated issuing diplomas.

3. The district court's jurisdiction was based on the Education of All Handicapped Children Act, 20 U.S.C. § 1415(e)(2), which provides that

any party aggrieved by the findings and decision under subsection (c) of this section [providing for a hearing before the State educational agency], shall have the right to bring a civil action ... in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

After the M.C.T. policy was adopted in 1978, the School District undertook to notify students of the additional requirement through distribution of circulars in the schools, individual mailings to some parents, and repeated announcements in the mass media. The State Board said in its Administrative Order that "the record does not clearly establish how well these efforts succeeded, and in particular does not establish that they were adequate to bring notice of the additional requirement with all of its possible consequences to the attention of the parents of the exceptional children involved in these complaints." A–49. While apparently accepting this finding, the district court said that "there is neither evidence nor contention that any plaintiff here did not know of the graduation requirement of passing the M.C.T. more than a year before his or her scheduled graduation." *Brookhart v. Illinois State Board of Educ.*, 534 F.Supp. 725, 727 (C.D.Ill.1982). We disagree that such notice was adequate as discussed in Part 3 *infra*.

■ Plaintiffs claim that the M.C.T. as applied to handicapped students violates federal and state statutes, as well as the due process and equal protection clauses of the Fourteenth Amendment. We note at the outset that in analyzing these claims deference is due the School District's educational and curricular decisions. See *Debra P. v. Turlington*, 644 F.2d 397 (5th Cir.1981), rehearing denied, 654 F.2d 1079 (1981); *Board of Educ. v. Ambach*, 107 Misc.2d 830, 436 N.Y.S.2d 564 (Sup.Ct.1981). The School District's desire to ensure the value of its diploma by requiring graduating students to attain minimal skills is admirable, and the courts will interfere with educational

policy decisions only when necessary to protect individual statutory or constitutional rights.

■ Before turning to the merits, we must address the question of standing to challenge the M.C.T. During the 1978/79 and 1979/80 school years, eleven of the plaintiffs who anticipated graduation in 1980 took the M.C.T. one or more times. None passed all three parts. Of the remaining three plaintiffs, one was eight years old at the time of the administrative hearing and had taken a portion of the third grade pilot M.C.T. while she was a special education pupil in the second grade; one was eleven years old and one was fifteen years old at the time of the hearing and both had not yet taken any portion of the M.C.T. (State Bd. Br. 8). None of these three plaintiffs had standing to challenge the institution of the M.C.T. as a graduation requirement. Two of the plaintiffs did not take the test; the third took a pilot test, the failure of which could not have affected the awarding of a diploma, since she was only in the second grade. These plaintiffs may renew their claims, if appropriate, at a later date.[4]

1. Education for All Handicapped Children Act

Plaintiffs claim that the denial of diplomas in this case violates the Education for All Handicapped Children Act (EHA) because it denies the individual handicapped students a "free appropriate public education." 20 U.S.C. § 1412(1). The Supreme Court recently examined this statutory requirement in *Board of Educ. v. Rowley*, —— U.S. ——, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), a suit brought by a deaf elementary

4. In support of their claim that these three plaintiffs have interests which diverge from those of the other eleven, the State Board points to a 1981 amendment of Ill.Rev.Stat., ch. 122, ¶ 14–6.01. Prior to September 25, 1981, Illinois law authorized but did not require a school district "to issue certificates of graduation to handicapped pupils completing special education programs." The statute was amended in 1981 to read:

No handicapped student may be denied promotion, graduation or a general diploma

on the basis of failing a minimal competency test when such failure can be directly related to the student's handicapping condition. For the purpose of this Act, "minimal competency testing" is defined as tests which are constructed to measure the acquisition of skills to or beyond a certain defined standard. The State suggests that the new statute might well preclude denying a diploma to these three even if their inability to learn is a result of a handicapping condition (State Bd. Br. 19). The question is presently premature for resolution.

school student seeking a sign language interpreter. The Court noted that the Act expressly defines a "free appropriate public education" to mean

> special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(18). The Court recognized that the "intent of the Act was more to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside."[5] —— U.S. at ——, 102 S.Ct. at 3042.

■ This analysis implies that the EHA does not require "specific results," *Board of Educ. v. Ambach, supra* 436 N.Y.S.2d at 570, but rather only mandates access to specialized and individualized educational services for handicapped children. Denial of diplomas to handicapped children who have been receiving the special education and related services required by the Act, but are unable to achieve the educational level necessary to pass the M.C.T., is not a denial of a "free appropriate public education." *Board of Educ. v. Ambach, supra;* see also *Battle v. Pennsylvania,* 629 F.2d 269 (3d Cir.1980).

■ Plaintiffs further contend that the imposition of the M.C.T. violates the EHA and corresponding regulation mandating that "no single procedure shall be the sole criterion for determining an appropriate educational program for a child." 20 U.S.C. § 1412(5)(C); see also 34 C.F.R. § 300.532

(1981). Yet plaintiffs admit that graduation requirements in Peoria are threefold: earning seventeen credits, completing State requirements such as a constitution test and a consumer education course, and passing the M.C.T. (Pl.Br. 31). In the face of this admission, passing the M.C.T. is clearly not the sole criterion for graduation.[6]

## 2. Rehabilitation Act of 1973

Plaintiffs also argue that application of the M.C.T. requirement constitutes unlawful discrimination under Section 504 of the Rehabilitation Act of 1973 (RHA), providing

> No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794. In *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980, the Supreme Court held that an "otherwise qualified" individual entitled to the protection of Section 504 is "one who is able to meet all of a program's requirements in spite of his handicap." *Id.* at 406, 99 S.Ct. at 2367. The Court held that a State nursing program could deny admission to an applicant with a serious hearing disability because, *inter alia,* the training program required that students be able to communicate orally while attending patients or assisting in operations. The statute does not require "an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Id.* at 413, 99 S.Ct. at 2370.

■ Plaintiffs in this case have no grounds on which to argue that the con-

---

5. The Court expressly rejected the district court's interpretation in *Rowley* that the disparity between the deaf student's "achievement and her potential" meant that she was not receiving a free appropriate public education. *Id.* at ——, 102 S.Ct. at 3040.

6. For the same reason, the M.C.T. requirement does not violate the State Board's regulation ensuring that "no single procedure is used as the sole criterion for determining an appropriate educational program for a child." Rule 9.11(6)(d), *Rules and Regulations To Govern the Administration and Operation of Special Education.*

tents of the M.C.T. are discriminatory solely because handicapped students who are incapable of attaining a level of minimal competency will fail the test. Altering the content of the M.C.T. to accommodate an individual's inability to learn the tested material because of his handicap would be a "substantial modification," 442 U.S. at 413, 99 S.Ct. at 2370, as well as a "perversion" of the diploma requirement. 534 F.Supp. at 728. A student who is unable to learn because of his handicap is surely not an individual who is qualified in spite of his handicap. Thus denial of a diploma because of inability to pass the M.C.T. is not discrimination under the RHA. *Board of Educ. v. Ambach, supra; Anderson v. Banks,* 520 F.Supp. 472, 511 (S.D.Ga.1981).

■ However, an otherwise qualified student who is unable to disclose the degree of learning he actually possesses because of the test format or environment would be the object of discrimination solely on the basis of his handicap. It is apparent, as the district court said, that "to discover a blind person's knowledge, a test must be given orally or in braille ...." 534 F.Supp. at 728. According to the Superintendent, the School District "concedes that modification of the Minimal Competency Test must be made available to the handicapped," and offered to readminister the test with certain modifications.[7] We agree with the Superintendent that federal law requires administrative modification to minimize the effects of plaintiffs' handicaps on any future examinations.

Plaintiffs make one additional argument, urging that federal law requires tests to be validated separately for handicapped students. The purpose of validation is to determine whether tests are suited to the purposes for which they are used with respect to a particular testing population. Cf. *Larry P. v. Riles,* 495 F.Supp. 926, 968–973 (N.D.Cal.1979). It is true that federal regulations under both the RHA and the EHA specify that a test, at least with respect to evaluation and placement, must be selected and administered so that the "results accurately reflect the student's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the student's impaired sensory, manual, or speaking skills ...." 34 C.F.R. §§ 104.35(b)(3) and 300.532(b)(3). However, we need not interpret the scope of these regulations to decide this case. Rather than issuing a broad order to the School District that might affect the validity of the M.C.T. for all handicapped students, we are deciding this case on less intrusive grounds, as explained *infra.*

### 3. The Due Process Claim

Plaintiffs' final argument is that the School District provided them inadequate notice of the M.C.T. requirement, thus depriving them of a protected liberty or property interest without due process of law.[8] Although the issues in this case do not fit easily into a traditional procedural due process analysis, we conclude, after close consideration, that the School District failed to satisfy constitutional requirements.

■ The first question to be decided is whether the plaintiffs have a protected liberty or property interest at stake. Denial of a diploma clearly affects a student's reputation. It attaches a "stigma" that will

7. After the Administrative Order was issued, the School District agreed to administer the language arts test to plaintiff Ellen Ioerger with a large print booklet and to administer the mathematics and language arts test to plaintiff Deborah Brookhart in a small, quiet room. Neither plaintiff took advantage of this offer. (School Dist.Br. 29 and n. 12.)

8. Plaintiffs also raise an equal protection claim for the first time on appeal. They appear to argue only that the M.C.T. requirement is invalid as applied to handicapped students, conced-

ing that the "Peoria School District ... does have the prerogative to determine that the competency of graduating students is best ensured by determining that certain minimal standards of achievement have been met." (Pl.Br. 16.) Neither the Superintendent nor the district court addressed this issue, and for that reason we decline to do so now. *Sharp v. Ford Motor Credit Co.,* 615 F.2d 423, 424 n. 1 (7th Cir.1980). See also *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826.

have potentially disastrous effects for future employment or educational opportunities. See *Board of Educ. v. Ambach, supra,* 436 N.Y.S.2d at 572–573. Though the Supreme Court held that injury to reputation alone does not implicate a liberty interest, *Paul v. Davis,* 424 U.S. 693, 701–702, 96 S.Ct. 1155, 1160–1161, 47 L.Ed.2d 405, it went on to say in the same opinion that liberty interests are implicated when injury to reputation is combined with "governmental action [that] deprived the individual of a right previously held under state law." *Id.* at 708–709, 96 S.Ct. at 1164. The Court in *Paul* reviewed its holding in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725, involving the procedural due process rights accorded a student suspended from school on charges of misconduct. In holding that such a suspension implicated a protected liberty interest under the due process clause, the Court pointed to two factors. Not only could charges of misconduct seriously damage the student's reputation, but in addition "Ohio law conferred a right upon all children to attend school, and ... the act of the school officials suspending the student there involved resulted in a denial or deprivation of that right." *Paul v. Davis, supra* 424 U.S. at 710, 96 S.Ct. at 1165. It was the removal of the right or interest "from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment." *Id.* at 711, 96 S.Ct. at 1165.

■ Plaintiffs in this case have more than merely an interest in protecting their reputations and avoiding the stigma attached to failure to receive a high school diploma. They, too, as in *Goss v. Lopez, supra,* had a right conferred by state law to receive a diploma if they met the requirements imposed prior to 1978: completion of seventeen course credits and fulfillment of the State's graduation requirements. In changing the diploma requirement, the governmental action by the School District deprived the individual of a right or interest previously held under state law. Plaintiffs thus have a liberty interest sufficient to invoke the procedural protections of the due process clause. *Board of Educ. v. Ambach, supra* 436 N.Y.S.2d at 572–573.[9]

■ The consequence of identifying a protected liberty interest is that governmental action cannot be used to deprive an individual of that interest without due process of law. Traditionally, a procedural due process right means "an opportunity to be heard on the factual basis underlying the loss of a liberty or property interest ...." *Anderson v. Banks, supra* at 504. A determination of what process is due involves defining the appropriate contours of the "opportunity to be heard." See *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. This case does not fit into the traditional procedural due process mold. Plaintiffs here do not contest the factual basis underlying the loss of a liberty interest; in fact, they admit that they did not pass the M.C.T. Rather, they demand procedures which would provide sufficient notice of the M.C.T. to enable them to prepare adequately to satisfy the new requirement.

We think that procedural due process protections are flexible enough to encompass notice of this kind. This approach has been followed by the Fifth Circuit and the New York State Supreme Court. In *Mahavongsanan v. Hall,* 529 F.2d 448 (5th Cir. 1976), Georgia State University instituted a new degree requirement (consisting of a comprehensive examination) after plaintiff had begun the masters program but before her graduation. In rejecting both procedural and substantive due process claims, the court emphasized that plaintiff received "timely notice" of the new examination; "ample notice to prepare;" and a "reasonable opportunity to complete additional course work in lieu of the comprehensive examination." *Id.* at 450. The issue arose again in *Debra P. v. Turlington,* 644 F.2d

---

**9.** Some courts have held that state law creates a legitimate expectation of receipt of a diploma, thereby creating a property interest for purposes of due process analysis. See *Board of Educ. v. Ambach, supra* 436 N.Y.S.2d at 572; *Debra P. v. Turlington, supra* at 403–404.

397, 403–404 (1981), where the Fifth Circuit stated its view that inadequate notice to students that they would be required to pass an exit examination before qualifying for a diploma violated procedural due process. *Board of Educ. v. Ambach,* 107 Misc.2d 830, 436 N.Y.S.2d 564, 573–575 (Sup.Ct. 1981), was a case essentially "on all fours" with this one. After finding that two handicapped plaintiffs had a protected liberty or property interest in receipt of a diploma, the court held that the school board unconstitutionally deprived them of their interest because inadequate notice precluded preparation for the exam. Following these precedents, we hold that plaintiffs were entitled to notice permitting reasonable preparation for the M.C.T.

This holding does bear some resemblance to a substantive, rather than a procedural due process holding.[10] See *Anderson v. Banks, supra* at 505. As a matter of procedural due process, plaintiffs have a liberty interest in receipt of a diploma that cannot be infringed without notice. Yet, as a matter of substantive due process, the nature of plaintiffs' right is by necessity limited by the School District's authority to change the diploma requirements. Plaintiffs' substantive right therefore is better defined as a right to adequate notice of any new diploma requirement in order to allow time to prepare. Denial of sufficient notice would make denial of a diploma and its attendant injury to reputation fundamentally unfair. *Debra P. v. Turlington, supra* at 404.

We must now consider whether the notice provided to plaintiffs was sufficient to satisfy constitutional requisites. The older eleven plaintiffs were informed that they were subject to the M.C.T. requirement during their junior year in high school. The State Superintendent found they therefore had approximately one and a half years to master the skills necessary to pass the M.C.T. (App. 56); the district court found that all plaintiffs had notice of the M.C.T. requirement one year prior to graduation. 534 F.Supp. at 727. Despite the fact that plaintiffs had between a year and a year and a half to be exposed to the material on the M.C.T., the record shows that individual petitioners lacked exposure to as much as 90% of the material tested (App. 56).

Plaintiffs' educational programs were developed in accordance with 20 U.S.C. § 1414(a)(5) requiring that each handicapped student receive an individualized educational program (IEP). An IEP is developed through the cooperative efforts of parents, teachers, and school administrators. Tr.Vol. I, at 148. Plaintiffs' expert at the hearing developed a matrix by which to compare the goals and objectives of the M.C.T. with the goals and objectives of plaintiffs' IEP's. The matrix indicated that as much as 90% of the material on the M.C.T. did not appear on the IEP's (App. 50, 56). The district court found that the "only possible reason" for the lack of exposure was that the students were incapable of learning the material, 534 F.Supp. at 730, and that therefore the amount of time provided the students for preparation was irrelevant. We agree with the State Superintendent's argument that this was error (State Bd. Br. at 28). First, several plaintiffs passed various parts of the M.C.T., thus indicating that the problem is not uniformly a lack of innate mental capacity. Second, Dr. Aaron Gray, Assistant Superintendent of Special Services in Peoria School District # 150, testified at the hearing that it is impossible to know which special education students will pass the M.C.T. and which will not, and that predicting whether a child has the ability to pass "is something that a responsible professional would not do." Tr.Vol. I, at 134. One of the School District's experts, Dr. Siegfried Mueller, first testified that one should not assume that any student cannot pass the M.C.T. The answer was then modified to allow for such an assumption if, for example, a twenty-one-year-old student who has been work-

---

10. For a discussion of their overlap, see Easterbrook, *Substance and Due Process,* 1982 Sup.

ing with a teacher or administrator for sixteen years is still scoring only ten instead of seventy on the exam, and then only "after a lot of evidence." Tr.Vol. I, at 72–73. The fact that the School District requires all handicapped students except those classified as trainable mentally handicapped to take the M.C.T. at least once (Tr.Vol. I, at 91–92) indicates that administrators are reluctant to speculate on the innate abilities or limitations of their students.

Finally, rather than reflecting an incapacity to pass the M.C.T., the record reflects that the plaintiffs' programs of instruction were not developed to meet the goal of passing the M.C.T., but were instead geared to address individual educational needs. Since plaintiffs and their parents knew of the M.C.T. requirements only one to one and a half years prior to the students' anticipated graduation, the M.C.T. objectives could not have been specifically incorporated into the IEP's over a period of years. If they were incorporated at all, it could only have been during the most recent year and a half. As the Superintendent found, "in an educational system that assumes special education students learn at a slower rate than regular division students," a year and a half at most to prepare for the M.C.T. is insufficient. Thus the length of the notice, rather than a deliberate decision not to instruct plaintiffs because of their incapacity to master the material, explains the overwhelming lack of exposure to M.C.T. goals and objectives.

There is some evidence in the record that after being informed of the M.C.T. requirement, several parents preferred to emphasize aspects of plaintiffs' education other than M.C.T. preparation. In the long run, as Dr. Mueller pointed out, parents and teachers may evaluate students and conclude that energies would be more profitably directed toward areas other than M.C.T. preparation; toward, for example, vocational training. Here however parents had only a year to a year and a half to evaluate properly their children's abilities and redirect their educational goals. We agree with the parents and the State Board that this

was insufficient time to make an informed decision about inclusion or exclusion of training on M.C.T. objectives.

The analysis prescribed by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, also dictates advance notice. The private interest at stake here is an interest in protecting reputation and in qualifying for future employment opportunities. The governmental interest in upgrading the value of a diploma is also significant. However, the risk of an erroneous deprivation of plaintiffs' interest in this case is overwhelming because of the near-total lack of exposure to the material tested. Requiring earlier notice and the attendant opportunity to learn the material will greatly decrease the risk of erroneous deprivation.

As described in *Board of Educ. v. Ambach, supra,* 436 N.Y.S.2d at 574–575, early notice would thus have benefitted plaintiffs in two ways: it "would allow for proper consideration of whether the goals of the students' IEP's should include preparation for the [M.C.T.] and would afford an appropriate time for instruction aimed at reaching that goal." We conclude that a year to a year and a half, in light of plaintiffs' overwhelming lack of exposure to the goals and objectives of the M.C.T., is constitutionally inadequate notice. See *Board of Educ. v. Ambach, supra,* at 574–575 (less than two school years is inadequate notice); but see *Anderson v. Banks,* 520 F.Supp. 472, 505–506 (S.D.Ga.1981) (twenty-four months is adequate notice); *Wells v. Banks,* 153 Ga. App. 581, 266 S.E.2d 270 (1980) (adequate notice though no specific time mentioned). Though we are unable on this record to define "adequate notice" in terms of a specific number of years, the School District can be assured that the requirement would be satisfied if one of the following two conditions for adequate notice is met. The School District can, first, ensure that handicapped students are sufficiently exposed to most of the material that appears on the M.C.T., or, second, they can produce evidence of a reasoned and well-informed decision by the parents and teachers involved that a particular high school student will be better off concentrating on educational ob-

jectives other than preparation for the M.C.T.

■ We turn finally to the question of remedy. Plaintiffs argue that the only proper remedy is issuance of diplomas, and the district court apparently agreed, stating that "if the M.C.T. program is constitutionally invalid as applied to these students, there is no impediment to issuance of the diplomas." 534 F.Supp. at 729. The School District suggests that plaintiffs should be denied diplomas, but allowed more time to participate in remedial classes and further opportunities to take the M.C.T.

The School District's position is not without merit. Some plaintiffs might have failed the M.C.T. despite decades of preparation; others might have opted out of it even if notified years in advance. By awarding these plaintiffs diplomas, the School District would be putting them in a better position than they would have been in had there been no due process violation. Traditionally, procedural due process remedies provide plaintiffs only with an opportunity to prove their eligibility for a benefit, rather than providing the benefit itself. See *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (welfare benefits provided on interim basis pending hearing on eligibility and subject to recoupment). Awarding diplomas here would amount to awarding the benefit itself. Substantively, the due process right is not a right to a diploma, see *supra* p. 186, but rather a right to adequate notice in order to prepare for the new requirement. Thus the appropriate remedy for the denial of this right is an extended period for preparation.

Plaintiffs argue that it is impossible to put them back in the position that they would have been in had they received adequate notice while still in school. Several are employed and would be forced to leave their jobs in order to participate in the remedial program and prepare for the M.C.T. Eleven plaintiffs have been away from school for over two years, since June of 1980, and it would be difficult, both psychologically and academically, for them to make up for lost time. They ask, essentially, why they should endure these hard-

ships when the School District was at fault for providing inadequate notice.

We agree with the School District that, in theory, the proper remedy for a violation of this kind is to require it to provide free, remedial, special education classes to ensure exposure to the material tested on the M.C.T., and a reasonable opportunity for plaintiffs to learn that material. We take note of the fact that the School District presently offers such courses (Tr.Vol. I, at 143–144), and we advise future handicapped students to bypass the courts and enroll in those courses when necessary. In this particular case however it is unrealistic to assume that eleven of these plaintiffs would be able to return to school without undue hardship. Consequently, the School District may not require those plaintiffs to pass the M.C.T. as a prerequisite for a diploma.

The judgment of the district court is reversed with directions to order the School District to issue high school diplomas to the eleven plaintiffs who satisfy the remaining graduation requirements.