**Michael and Jane TIMMS, on behalf of their minor child, Sarah Timms, as parents and natural guardians, and Sarah Timms, individually, Plaintiff-Appellant,**

**v.**

**METROPOLITAN SCHOOL DISTRICT OF WABASH COUNTY, IND., et al., Defendants-Appellees.**

No. 82–3084.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1983.

Decided Sept. 19, 1983.

Ernest M. Beal, Jr., Peters, Terrill, Parrish & Larson, Fort Wayne, Ind., for plaintiff-appellant.

Byron L. Myers, Ice, Miller, Donadio & Ryan, Eric M. Cavanaugh, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before CUDAHY and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

Sarah Timms, through her guardians and parents Michael and Jane Timms, brought this action seeking declaratory, injunctive, and monetary relief for alleged violations of the Education for All Handicapped Children Act ("EAHCA"), 20 U.S.C. §§ 1401–20, section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (1976), the Civil Rights Act of 1871,

42 U.S.C. § 1983 (1976 & Supp. IV), and the Equal Protection and Due Process Clauses of the fourteenth amendment. Defendants-appellees are the Metropolitan School District of Wabash County, Indiana (the "School District"), the Indiana State Board of Education, the Wabash-Miami Area Program for Exceptional Children, and Drs. Harold H. Negley and Edward Kasamis. For the reasons that follow, we affirm the district court's summary judgment in favor of defendants.

I

Sarah Timms is a profoundly mentally-handicapped twenty-one year old who has been institutionalized since the age of five. In September 1975, with the aid of the Indiana Department of Mental Health, Sarah was placed in the Vernon Manor Nursing Home in Wabash. From the fall of 1976 through the spring of 1980 Sarah received one to one-and-one-half hours of educational services per day. During this time Sarah exhibited a persistent pattern of "self-abusive" behavior which consisted of striking herself with her hands and arms, and which resulted in bruises and other injuries.

Mrs. Timms attended a case conference with the School District on March 27, 1979 for the purpose of developing an "individualized educational program" ("IEP") for her daughter. Mrs. Timms requested that Sarah be placed in a full-day instructional program (approximately five hours per day) in the hope that Sarah would respond to increased attention. The School District, however, offered to increase instruction only to one-and-one-half hours per day. The School District believed that Sarah would be unable to tolerate a full day's instruction, and perceived a correlation between Sarah's self-abusive behavior and increased activity.

Mrs. Timms filed objections to the proposed IEP and requested a hearing examiner be appointed to consider an appropriate program.[1] Following an October 19, 1979

1. 510 I.A.C. 7–1–3(G); 20 U.S.C. § 1415(b)(2) (1976).

administrative hearing, the hearing officer recommended that Sarah be given a full day of instruction. The School District petitioned for review of this decision[2] by the Commission on General Education of the Indiana State Board of Education (the "Commission"). The Commission, on review, ordered that further evaluation be undertaken to determine the relationship between type and level of activity and Sarah's self-abusive behavior. The Commission also ordered that the hearing officer report by May 1, 1980 concerning the progress made in the evaluation.

Before a report could be made plaintiffs filed suit on March 25, 1980 seeking both equitable and monetary relief. The equitable portion of plaintiffs' complaint asked that defendants be enjoined from excluding Sarah from a full-day educational program; plaintiffs also moved for a temporary restraining order and a preliminary injunction to restrain defendants from excluding Sarah from a full day of instruction. The district court ruled in favor of defendants on all equitable relief. On appeal, a panel of this court, in an unpublished order, 654 F.2d 726, vacated the district court's judgment and remanded for reconsideration. This court's April 13, 1981 order held that because the School District had voluntarily placed Sarah in a full-day instructional program as of September 1980, plaintiffs' claims for preliminary injunctive relief were then moot. Remand was necessary, however, to consider plaintiffs' claim for permanent injunctive relief, as well as claims for damages.

Following remand, both parties filed motions for summary judgment. The district court found for defendants on all claims. In a comprehensive opinion, it first held that the Timms' claims under the EAHCA must be dismissed for their failure to exhaust administrative remedies. The court pointed to the fact that the Timms filed suit before the additional evaluation of Sarah could be undertaken, as ordered by the Commission. The court also held that under *Anderson v. Thompson,* 658 F.2d 1205

(7th Cir.1981), the Timms were precluded from recovering damages in the form of "compensatory education," and that relief under the Rehabilitation Act was not available because the EAHCA is the exclusive remedy for violations of that Act. Finally, the court found without merit the Timms' allegations that they were denied equal protection and due process of law because Sarah was not placed immediately in a full-day educational program. The court reasoned that because Sarah was never excluded from instruction, no equal protection claim could be sustained; also because defendants had followed the prescribed procedural steps under Indiana law for evaluation of handicapped children, there had been no due process violation. This appeal followed.

## II

### Injunctive Relief Under the EAHCA

█ With regard to plaintiffs' claim for the prospective aspect of injunctive relief for alleged violations of the EAHCA, (as opposed to compensatory education, discussed *infra* ), we find plaintiffs' request for an order prohibiting defendants from excluding Sarah from a full school day moot. It is settled that our jurisdiction requires "an actual controversy . . . to exist at all stages of appellate review," *Central Soya Co., Inc. v. Consolidated Rail Corp.,* 614 F.2d 684, 687 (7th Cir.1980), and that dismissal is required when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969). Plaintiffs' declaratory relief claim fails to present such a "live" controversy for two reasons. First, Sarah is now twenty years old, past the age at which the defendants are required to provide educational services. Under the EAHCA, a state must provide educational services to handicapped persons over the age of eighteen in the same proportion that such services are provided to non-handicapped persons. Plaintiffs do not

---

**2.** 510 I.A.C. 7–1–3(H); 20 U.S.C. § 1415(c)    (1976).

contest that the defendants have satisfied this requirement.

Second, the exception to mootness implicated where conduct is "capable of repetition, yet evading review," is not relevant. This exception requires at least the possibility that "the same complaining party would be subjected to the same action." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); *Central Soya Co., Inc., supra,* 614 F.2d at 689 ("there must be a reasonable degree of likelihood that this issue will be the basis of a continuing controversy between *these two parties*") (emphasis in original). Again, because Sarah is past the age of eighteen, there is no possibility that she will be subject to the alleged mishandling in her IEP by defendants. Cases cited by plaintiffs are not helpful to their argument, involving as they do student-plaintiffs who would be entitled to continuing educational services in *future* years. *See, e.g., Robert M. v. Benton,* 634 F.2d 1139 (8th Cir.1980) (eight year old student); *Espino v. Besteiro,* 520 F.Supp. 905 (S.D.Tex.1981) (seven year old student); *Selelyo v. Drury,* 508 F.Supp. 122 (S.D.Ohio 1980) (first grade student). We therefore find plaintiffs' claim for injunctive relief moot.[3]

*Compensatory Education and Section 504 of Rehabilitation Act*

Discussion of plaintiffs' claim for compensatory education under the EAHCA as well as claims for relief under the Rehabilitation Act necessarily begins with *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981). In *Anderson* this court held that, with two exceptions, monetary damages are not available under the EAHCA. Following a review of the Act's language and legislative history, *Anderson* recognized that "[a] damage remedy is not, in our view, generally consistent with the goals of this statute. When a school district makes a good faith effort to provide a child with an appropriate education, we do not believe that as a

general rule it is a good policy to require that a school district pay money damages if it later turns out that a different programming decision should have been made." 658 F.2d at 1213. We concluded that section 615(e)(2) of the EAHCA, 20 U.S.C. § 1415(e)(2), "was intended in most cases to provide only injunctive relief as a final procedural safeguard that would ensure an appropriate educational program for a handicapped child." 658 F.2d at 1210.

*Anderson* also held that section 615(e)(2) of the EAHCA was the exclusive remedy for challenging allegedly erroneous placements ·of handicapped children. In holding that plaintiffs' action was not cognizable under 42 U.S.C. § 1983, we found dispositive both the fact that the EAHCA contains elaborate administrative and judicial enforcement mechanisms, as well as the fact that the available relief under the two statutes was inconsistent. As such, plaintiffs there could not challenge an educational placement decision under section 1983. Against this backdrop, we consider plaintiffs' claims in the present case.

**A**

The Timms first seek injunctive relief in the form of compensatory education. Their argument is that the School District should be directed to provide Sarah with one full year of day-long instruction to compensate for the 1979–80 school year during which she received only one-and-one-half hour of instruction. The issue, then, is whether such compensatory education is barred under *Anderson*'s rationale denying monetary damages for alleged violations of the EAHCA. One court has held that it is not recoverable. *See Miener v. Missouri,* 673 F.2d 969 (8th Cir.1982). We conclude that for the same reasons damages are not available, compensatory education cannot be recovered.

---

**3.** The district court, in the alternative, based its dismissal on plaintiffs' failure to exhaust administrative remedies. We do not address this issue, however, because the determination of whether a live controversy exists necessarily

precedes such an inquiry. *See Central Soya Co., Inc.,* 614 F.2d 684, 687 ("If there is a question as to whether a particular matter is moot, a federal court must resolve that issue before it ̦assumes jurisdiction. . . .").

It is apparent that compensatory education, like damages, would presumably be awarded for a past erroneous IEP determination. In *Anderson,* however, we noted that "problems of classification and treatment abound." 658 F.2d at 1213, and as such found it contrary to the Act's purposes to penalize school officials for good faith, though incorrect, placement decisions. This same concern is implicated in compensatory education: it would be similarly punitive to require school officials to spend funds providing additional education for students whose IEP was found erroneous. Moreover, *Anderson* emphasized that it was "unlikely that it [the EAHCA] was generally intended to provide more than prospective relief." 658 F.2d at 1212. We find compensatory education contrary to this congressional intent.

Further, it is undisputed that Sarah did receive some educational services, though not as much as her parents would have liked. And it may be true, as the Timms argue, that Sarah would have benefitted more from more intensive study and a longer school day. But the Supreme Court in *Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), held that a state does not violate the EAHCA by failing "to maximize the potential of each handicapped child . . . ." *Id.,* 102 S.Ct. at 3048 & n. 23. Because Sarah did receive educational services, which the Timms do not allege was not beneficial, we conclude that compensatory education is not available.

Plaintiffs, however, argue in the alternative that relief is not foreclosed because *Anderson* allows damages where "a defendant has acted in bad faith by failing to comply with the procedural provisions of section 615 [20 U.S.C. § 1415(e)(2)] in an egregious fashion." 658 F.2d at 1214. Whether compensatory education, like damages, would be available under *Anderson's* "bad faith" exception is a question we need not decide, for we agree with the district court that nothing in this record suggests bad faith on the part of either the state or local defendants. To the contrary, it appears that plaintiffs were afforded all procedural safeguards prescribed by the EAHCA, as the district court found. Plaintiffs' only support for their bad faith argument is in a letter written by one defendant, Dr. Kasamis, in which he states his refusal to place Sarah in a full-day instructional program until instructed by a court of law. But it is unclear to us how Dr. Kasamis' insistence in adhering to the EAHCA review procedure constitutes an "egregious" failure to comply with these same provisions under *Anderson.* We therefore affirm the district court's finding that plaintiffs' claim of bad faith is "totally unfounded," and hold that summary judgment on this issue was appropriate.

### B

■ *Anderson* did not address whether section 504 of the Rehabilitation Act provides an alternative cause of action for alleged violations of the EAHCA. 658 F.2d at 1217 n. 20 (issue not raised in district court); *see also Doe v. Koger,* 710 F.2d 1209 at 1211 (7th Cir.1983) (same). Our analysis of the relationship between the EAHCA and the Rehabilitation Act requires a twofold inquiry: first, whether the *Anderson* rationale precludes a section 504 challenge to the actual placement decision made by school administrators under the myriad procedural steps required by the EAHCA, and second, in light of *Doe v. Koger* and *Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), whether section 504 provides a cause of action to challenge alleged deficiencies in the actual procedures implemented by a state pursuant to the EAHCA. We conclude that as to both issues the EAHCA is the exclusive remedy.

In our view, the first inquiry requires little discussion. *Anderson* articulated the following reasons for holding that section 1983 could not support a cause of action for violations of the EAHCA:

> In sum, the availability of a private right of action under the EAHCA, the detailed statutory administrative and judicial scheme, the fact that Congress intended the EAHCA to create new rights, and the absence of a traditional damage remedy, together compel our conclusion

that the judicial remedy provided in the EAHCA was intended to be exclusive. 658 F.2d at 1217. These considerations apply with equal force to the Rehabilitation Act. As is true of section 1983 (and opposed to the EAHCA), the Rehabilitation Act expressly provides for attorney's fees (29 U.S.C. § 794a). The district court further reasoned that

> resort to either statute [section 1983 or section 504] would allow plaintiffs to circumvent the detailed structure of the EAHCA in violation of Congress' intent in enacting that statute. It could not have been Congress' intent that where a plaintiff's claim under the Rehabilitation Act is in every respect identical to his EAHCA claim, a remedy that is precluded under the latter should be available under the former.

We agree, and accordingly hold that the EAHCA provides the exclusive mechanism for challenging student placement decisions. *Accord Monahan v. Nebraska,* 687 F.2d 1164 (8th Cir.1982); *Mark R. v. Board of Education,* 546 F.Supp. 1027 (N.D.Ill.1982); *Reineman v. Valley View Community School Dist. 365–U,* 527 F.Supp. 661 (N.D.Ill.1981).

The question remains whether, as plaintiffs contend, section 504 of the Rehabilitation Act is available to contest allegedly deficient *procedures* established by state and local school authorities in implementing the EAHCA. Plaintiffs point to a number of cases which apparently support their argument. *See, e.g., S–1 v. Turlington,* 635 F.2d 342 (5th Cir.1981) (section 504 challenge to *expulsion* of handicapped child from EAHCA program); *Gary B. v. Cronin,* 542 F.Supp. 102 (N.D.Ill.1982) (section 504 challenge to state's refusal to provide "related services" under the EAHCA); *Parks v. Pavkovic,* 536 F.Supp. 296 (N.D.Ill.1982) (same); *William S. v. Gill,* 536 F.Supp. 505 (N.D.Ill.1982) (same). But we find these decisions unpersuasive, decided as they were before the Supreme Court's recent holding in *Rowley* and not involving the same facts as an EAHCA violation. *Rowley* established that section 1415(e)(2) of the EAHCA, which authorizes the district court to grant "such relief as the court determines is appropriate," 102 S.Ct. at 3050,

quoting 20 U.S.C. § 1415(e)(2), "cannot be read without reference to the obligations, *largely procedural in nature,* which are imposed upon recipient states by Congress." *Ibid.* (emphasis added). The Court further observed that

> the Congressional emphasis upon full participation of concerned parties throughout the development of the IEP, as well as the requirements that state and local plans be submitted to the Commissioner for approval, demonstrate the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the substantive content in an IEP.

102 S.Ct. at 3049. To ensure that courts would review both procedural challenges to the EAHCA as well as substantive placement decisions, *Rowley* expressly mandated that the threshold inquiry in an EAHCA claim must be whether recipient states have complied with the detailed procedural requirements specified by Congress. *Id.* We conclude that because the scope of review under section 1415(e)(2) includes procedural compliance by recipient states, the EAHCA is the exclusive remedy.

Our conclusion is supported by the recent decision of this court in *Doe v. Koger, supra.* The issue in *Koger,* not addressed in *Anderson,* was whether section 1983 may be utilized to enforce a state's compliance with the EAHCA's procedural requirements. Equally applicable to our decision in this case regarding section 504 is our holding in *Koger* that

> a reading of the broad provisions of EAHCA in light of the Supreme Court's interpretation inevitably leads to the conclusion that EAHCA itself meets all a parent's needs to assure their children receipt of the benefits of the Act, whether the complaint raises only an *Anderson* issue, or, as in this case, attacks the procedures themselves. EAHCA gives the district court jurisdiction to grant appropriate relief and that is all that is necessary to bring any deficient state procedures into conformity with the Act.

710 F.2d 1209 at 1213 (7th Cir.1983) (footnote omitted).

**218**

### III

In summary, we hold that plaintiffs' claims for injunctive relief under the EAHCA are moot, and that compensatory education is not recoverable. Further, we affirm the district court's dismissal of plaintiffs' claims under the Rehabilitation Act because the EAHCA provides the exclusive basis through which to challenge state and local compliance with the Act. We have considered all other arguments raised by plaintiffs and find them without merit.

The judgment of the district court is affirmed.

CUDAHY, Circuit Judge, dissenting.

I must respectfully part company from the majority with respect to one premise: that compensatory education clearly constitutes a form of damages. The majority believes that the two are identical, because it would be "punitive to require school officials to spend funds providing additional education for students whose IEP was found erroneous." At 1213. But I do not believe this observation is determinative—or even, perhaps, relevant. Whether a remedy is or is not punitive does not determine whether it constitutes prospective relief (in the nature of an injunction), on the one hand, or retrospective relief (like damages), on the other. The remedy which the plaintiffs here seek is an extension of the education given by the state of Indiana to their daughter. Such a remedy is entirely prospective and thus well within the equitable powers of the court.

This question is not governed, as are other issues in this case, by *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981), which concerned a tuition reimbursement for *past* educational placement. The Eighth Circuit, in an opinion upon which the majority relies, has found that compensatory services are indistinguishable from a request for reimbursement because both are "measurable against past educational deprivation." *Miener v. Missouri,* 673 F.2d 969, 982 (8th Cir.1982). This observation may be correct, but it should not be dispositive. Although the Supreme Court has never addressed the issue in a context identical to

the one at hand, *Milliken v. Bradley II,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), offers an instructive parallel. Defending the court order of remedial (or compensatory) programs in the Detroit public schools against an attack on Eleventh Amendment grounds (the usual context in which the prospective-retrospective dichotomy arises), the Court held:

That the programs are also "compensatory" in nature does not change the fact that they are part of a plan that operates *prospectively* to bring about the delayed benefits of a unitary school system. We therefore hold that such prospective relief is not barred by the Eleventh Amendment.

433 U.S. at 290, 97 S.Ct. at 2762 (emphasis in original). Two district courts, moreover, have come to similar conclusions in cases similar or closely analogous to the one before us. In *Campbell v. Talladega County Board of Education,* 518 F.Supp. 47 (N.D. Ala.1981), the court ordered the state to provide a severely retarded 18-year-old with education beyond the period usually provided, saying that:

while the court recognizes that no education can adequately compensate Joseph for past deprivations, under an appropriate IEP significant progress is still possible. Accordingly, defendants will be ordered to provide Joseph with a free and appropriate public education for two years past his 21st birthday.

518 F.Supp. at 56. At the same time it ordered compensatory education, the *Campbell* court also specifically refused to award any damages. Likewise, in a case under the Developmentally Disabled Assistance and Bill of Rights Act, the District Court for the District of South Dakota ordered funding of what was essentially compensatory education in the face of an Eleventh Amendment challenge. *Henkin v. South Dakota Dep't of Social Services,* 498 F.Supp. 659, 667–68 (D.S.D.1980), *vacated on other grounds,* 676 F.2d 703 (1981).

Such an assumption, that prospective relief is always within the equitable powers of the federal court, is reflected, as well, by a recent opinion of this court under the EAHCA, *Brookhart v. Illinois State Board of*

*Education,* 697 F.2d 179 (7th Cir.1983), in which the court said:

> ... in theory, the proper remedy for a violation of this kind is to require it [the School District] to provide free, remedial, special education classes....

697 F.2d at 188. Although the panel ultimately decided that the remedy it deemed most appropriate in theory was impractical in a case where the high school student plaintiffs had already been out of school more than two years and were presumably disinclined to return, the court's assumption that such an order—of essentially remedial or compensatory education—was an entirely proper one under the Education for All Handicapped Children Act. Since I believe that the district court has authority to grant such prospective relief in a proper case (conceivably but not necessarily that of Sarah Timms), I do not agree that this case is moot.

I therefore respectfully dissent.